[Civ. No. 15034. First Dist., Div. One. June 23, 1952.]

PHILIP L. FOX, Appellant, v. SAN FRANCISCO UNIFIED SCHOOL DISTRICT et· al., Respondents.

Alexander S. Keenan, Jr., for Appellant.

Dion R. Holm, City Attorney, Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer, for Respondents.

PETERS, P. J.—This case involves substantially the same legal questions as were presented in *Tucker* v. *San Francisco Unified School District*, 1 Civ. No. 15033, this day decided (*ante*, p. 875 [245 P.2d 597].) Fox, too, was a probationary teacher who was discharged by the board. He, too, sought by mandate to be reinstated. His petition was denied by the superior court, judgment entered against him, and he appeals.

The uncontradicted facts as to Fox show the following: He was first appointed a probationary teacher in the Junior High School Division of the San Francisco Unified School District in 1947. He was reelected to teach as a probationary teacher for the school term 1948-1949, and for the school term of 1949-1950. He was notified of his dismissal, pursuant to section 13583 of the Education Code on or prior to May 15, 1950. Had he not been then discharged, he would have qualified as a permanent teacher. (Ed. Code, § 13081.)

Charges, as in the Tucker case, were filed against appellant by the superintendent on April 10, 1950, and on April 11, 1950, the superintendent sent to appellant, by registered mail, a copy of the charges, a copy of the rules and regulations, and a letter of transmittal substantially similar to the one quoted in the Tucker case. These were received and receipted for

by appellant's agent on April 12, 1950. The listed charges were incompetency, evident unfitness for service, failure to secure and hold the attention of the pupils in class; lack of discipline and control of the pupils; will not follow suggestions for control of classes; promises to carry out suggestions for improvement and to accept responsibility, but does not do so; and poor teaching results.

After receipt of this letter, with its enclosures, appellant apparently requested an interview with the superintendent. Under date of May 3, 1950, the superintendent sent the following letter to appellant:

"Dear Mr. Fox:

"It has been reported to me that you have requested an interview with me. I should be very happy to grant you an interview tomorrow afternoon, Thursday, May 4, at my office at 4 o'clock. I shall invite to be present at the meeting Mr. Breyer, the Legal Adviser to the Board of Education, and Mr. Ernest Cummings, Assistant Superintendent in charge of Secondary Schools.

"Because I am very pressed for time, I shall have to ask that you not review matters you have discussed with me and Mr. Breyer previously over the telephone. I shall be glad to listen to any new material you wish to present. In view of the fact, however, that this matter has been presented to the Board of Education and is now in the hands of the Board there is no action that I can take relative to it. Any new evidence which you wish to present, either you or your attorney can present before the Board of Education on May 10.

"I would suggest, however, that if you wish to present any evidence that you extend to the Board of Education the courtesy of requesting in writing a hearing before the Board.

> Sincerely,
> Herbert C. Clish,
> Superintendent of Schools"

Appellant, under date of May 4, 1950, sent the following telegram to the superintendent: "In view of your letter May 3rd no interview necessary. Your letter has me puzzled as I have no knowledge of any Board meeting May Tenth. What takes place on that date. Please advise.

> Philip Fox"

The superintendent on the same day—May 4, 1950—sent

to appellant a registered letter, receipted for by appellant's agent on May 8, 1950. The letter reads as follows:

"Dear Mr. Fox:

"This will serve to acknowledge your telegram of May 4 which reads as follows: [Quoted.]

"My letter of May 3 was sent as a result of information that I had received to the effect that you desired an interview with the Superintendent.

"In answer to your inquiry as to the meeting of the Board of Education on May 10, may I advise you that the Board of Education on that date will take action on the charges heretofore filed against you and certain other probationary teachers. A communication was previously sent to you informing you of the charges, enclosing a copy thereof, together with the rules and regulations of the Board of Education governing the procedure for the dismissal of probationary teachers. As the letter pointed out, if you desired to have a hearing of the charges before the Board of Education, you were required to file a written demand with the Superintendent within the period prescribed by the regulations. Also as you may recall, when you telephoned the Superintendent concerning this matter after you received the communication, he pointed out to you the requirement that you request a hearing of the charges if you decided to have such a hearing. Neither the Superintendent nor the Board of Education received a request for a hearing.

Sincerely,

Herbert C. Clish,

Superintendent of Schools"

Appellant at no time requested a hearing as provided in rule 2. On May 10, 1950, the board met. This was the same meeting at which Tucker was dismissed. Appellant did not personally appear, but a lawyer appeared and made a "special appearance" on his behalf. The lawyer conceded that no demand for a hearing had been filed, but objected to the board proceeding on the ground that appellant had not been informed of the May 10th hearing until May 8th, that two days' notice was inadequate, and, in legal effect, no notice at all, and for that reason the board had no jurisdiction to proceed. The board reserved its ruling on this objection until after counsel for the board had introduced all the communications above quoted. Then the president of the board asked the lawyer whether he desired to demand a hearing on behalf

of appellant. Counsel replied that such a step was not up to him, that he was appearing specially to object to the jurisdiction of the board and not to demand a hearing, and that under the law a hearing was mandatory regardless of a demand. One of the board members, with the consent of the president of the board, then asked the lawyer if he could prepare appellant's defense if the board granted a continuance for two more days. The lawyer refused to speak for the record, and the president, quite properly, refused to hear him otherwise. The objection to the jurisdiction of the board was then overruled.

The superintendent was then called as a witness and identified some six efficiency reports on appellant as the regularly kept personnel records prepared for all probationary teachers. In addition to the foundation given in the Tucker case, the superintendent testified that supervision over probationary teachers such as appellant, who was teaching in a secondary school, is carried on by the administrative staff of the school, assisted by the coordinator of a special department, if such is involved, and by the coordinator of secondary education and the assistant superintendent in charge of secondary schools. Reports are regularly prepared at the end of each school term, and, where necessary, special reports are filed. These are official reports of the department prepared in regular course. The six reports on appellant covered a period from September 3, 1947, to March 29, 1950.

These reports are too lengthy to refer to in detail. They show ratings on the 1 to 8 scale as to the characteristics referred to in the Tucker case of 5, 6 and 7. They also demonstrate that the administrative superiors of appellant made many efforts to help him, but that his teaching work and technique grew progressively worse. Generally speaking, these reports stated that appellant was lacking in industry, dependability, initiative and resourcefulness; that he failed to cooperate with the students, and failed to assume proper responsibilities; that he presented little material to his classes, and failed to use the materials available; that he had little contact with his classes; that his teaching results were poor; that his main interest was in extracurricular activities and not in his school work; that his school clerical work was poor; that he failed to maintain discipline in his classes and they were frequently disorderly; that he was careless in following instructions; that his preparation for his classes was very poor; that his cooperation with the administrative staff was poor; that he

showed little interest in improving his methods; that his teaching methods were poor, and that his fundamental training was deficient. These reports were filed by several different principals of the several schools where appellant had taught during the period here involved. Several principals recommended against his retention in their schools, but there were some favorable recommendations and ratings. Several reports referred to appellant's great interest in school administration and recommended his retention.

The superintendent then testified that, before filing these charges against appellant, he considered all of these reports and conferred with each of the principals reporting, and then called a conference of all such principals to discuss appellant's work. It was on all this information thus gained that the charges were predicated. It was the superintendent's opinion that appellant was not a competent teacher, and that his retention would not be for the best welfare of the schools or the pupils. The board then, by the unanimous vote of the five members present (two members being absent), passed a resolution finding that the charges of incompetency and unfitness for service were true, that appellant's dismissal would be for the best welfare of the schools and the pupils, and appellant was discharged. He was so notified. Thereupon, he, by writ of mandate, sought to be reinstated, and certified as a permanent teacher. The case was tried in the superior court on the record and proceedings before the board. As in the Tucker case, the trial court found that the dismissal was proper, concluded that appellant had waived his right to a hearing, and denied the application for the writ. This appeal was then taken.

Appellant's main contention, as in the Tucker case, is that the requirement for an adversary public hearing is mandatory; that appellant is entitled to notice of the hearing regardless of a demand; and that rule 2 is invalid in providing for a waiver by nonaction. These contentions are without merit. They have all been considered and decided adversely to appellant in the Tucker case. The additional circumstances here present—the communications of May 3d and 4th, and the "special appearance" on May 10th—in no way change the rule. Appellant had personal knowledge that the charges had been filed as early as April 12, 1950. He then was informed that under rule 2 he had the right to demand a hearing to challenge the charges if he filed his request within seven days. This, he voluntarily elected not to do. Even after his

waiver, the board was quite willing to waive his default and to listen to any defense. Nevertheless, through his counsel, appellant refused to present a defense, electing to rely on the technical objection that he was entitled to notice of the May 10th meeting. Of course, he then knew that under the provisions of section 13583 of the Education Code that the board had to act by May 15th, and was undoubtedly hoping to stall the proceedings beyond that date. For the reasons given in, and on the authority of, the Tucker case, it is held that rule 2 is valid, and that appellant voluntarily and effectively waived his right to an adversary public hearing.

■ This appellant raises one other point not raised in the Tucker case, and that is, that all the departmental reports upon which the discharge was predicated, and the testimony of the superintendent, were hearsay, and that the board was without authority to dismiss him on such evidence. The point requires but scant consideration. As already pointed out, appellant effectively waived his right to an adversary public hearing by his failure to demand such hearing. The board, of course, under section 13583 of the Education Code, can only dismiss for ''cause.'' How it is to determine ''cause,'' when there has been a waiver of an adversary hearing, is left to the discretion of the board. It elected to ascertain whether such cause existed at a meeting of the board at which evidence was produced. Even if the evidence were all hearsay that could have been objected to in an adversary hearing, having elected not to participate in the hearing and having waived his right to a hearing, he is in no position to now object on appeal that the testimony was hearsay, if that hearsay was of sufficient probative value to show ''cause'' for his dismissal. That it was of such probative value is obvious. ■ Hearsay, even at common law, if unobjected to when offered, can be of probative value, and certainly occupies a similar position in an administrative proceeding such as this.

■ Moreover, while it is true that in an adversary hearing, hearsay, properly objected to, is insufficient alone to support a finding, if that hearsay would be inadmissible in a civil action (*Walker* v. *City of San Gabriel*, 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383]; *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716 [160 P.2d 816]; see, also, Gov. Code, § 11513(c)), that rule does not apply to admissible hearsay. Even if the principal's reports were entirely hearsay, they would have been admissible even had this hearing been an adversary hearing. ■ Under the provisions of the Uniform

Business Records as Evidence Act these records were admissible as business records. They were not records prepared after the charges had been made and in preparation for this proceeding. They were regular personnel reports prepared in regular course. They were identified by the superintendent who testified as to the mode of their preparation. Under such circumstances, they were admissible as business records.

Section 1953e of the Code of Civil Procedure provides: ''The term 'business' as used in this article shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not.''

Section 1953f of that code provides: ''A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.''

These sections include government reports when the other elements of the section are shown to exist. (*Nichols* v. *McCoy*, 38 Cal.2d 447 [240 P.2d 569]; *Brown* v. *County of Los Angeles*, 77 Cal.App.2d 814 [176 P.2d 753]; *Holder* v. *Key System*, 88 Cal.App.2d 925 [200 P.2d 98]; *Guntner* v. *Claggett*, 65 Cal.App.2d 636 [151 P.2d 271]; 35 Cal.L.Rev. 434.) Under these sections, even had this been an adversary hearing, and had the reports been objected to, they would have been admissible. They amply support the judgment.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 21, 1952.