[Civ. No. 15902. First Dist., Div. Two. May 24, 1954.]

ETHEL I. SWEGLE, Appellant, v. STATE BOARD OF EQUALIZATION, Respondent.

Anderson & Peck, Milner J. Anderson and Edward F. Peck for Appellant.

Edmund G. Brown, Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

KAUFMAN, J.—Ethel Swegle, the holder of an on-sale general liquor license, appeals from a judgment of the Superior Court of Alameda County denying a writ of mandate by which appellant had sought to set aside the decision of the State Board of Equalization revoking the aforesaid license.

Appellant was charged on October 27, 1952, by amended accusation with the violation of section 58 of the Alcoholic Beverage Control Act (formerly 2 Deering's Gen. Laws, Act 3796, § 58, now Bus. & Prof. Code, § 25601), in that she "kept and permitted her . . . premises to be used as a disorderly house and place to which people abided or to which people resorted to the disturbance of the neighborhood and for purposes which were then and there injurious to the public morals, health, convenience and safety:

"1. In that during said period of time the licensee permitted numerous fights and disturbances to occur on the premises;

"2. In that during said period of time persons were permitted to become intoxicated at said premises, and intoxicated persons were permitted to remain in and about said premises and to engage in numerous fights and disturbances on said premises;

"3. In that during said period of time licensee permitted known prostitutes to enter and remain in and upon said premises, and licensee permitted solicitation of acts of prostitution to take place upon said premises."

After hearings on January 5 and 15, 1953, the hearing officer made findings of fact substantially in the language of the accusation and recommended indefinite suspension of the license. On February 17, 1953, the Board of Equalization adopted the proposed decision but assessed the penalty as revocation of the license after hearing argument by appellant's counsel.

The trial court found, upon examination of the record of the administrative hearings and after argument by counsel, that licensee kept a disorderly house; that the premises were a disturbance to the neighborhood and injurious to the public morals, health, convenience and safety; that fights and disturbances occurred on the premises; that persons were permitted to become intoxicated on the premises and permitted to remain thereon, and that acts of solicitation by known prostitutes took place upon the premises. It was found that the evidence before the board constituted good cause for revocation of the license.

The premises owned by appellant, known as Brick's Place was located at 815 Washington Street, Oakland.

Officer Pereira of the Oakland Police Department testified that acts of solicitation by certain known prostitutes whom he named occurred in Brick's Place on February 28, 1952, July 8, 1952, July 10, 1952, another on July 10, 1952, and September 2, 1952. These acts of solicitation were addressed to Pereira's plain-clothes police partner within the bar and Pereira himself did not witness them. He could not recall the names of any of the partners he had worked with as he had a different one every month. Arrests of the prostitutes were made by Pereira at the time and he stated the sentences that they had received. Objection was made to this testimony as hearsay in the first two instances, since Pereira admitted that the police records could be produced to show what officer was solicited. The hearing officer said he would not make an order at that time striking out the testimony as to solicitation, but would do so unless it was connected up by testimony of the person solicited. The other officer was never produced and there is nothing in the record to show that the hearing officer struck out the testimony. The situation was the same as to the last three instances, but further objection was not made, although counsel brought out that the alleged solicitation did not occur in the presence of the officer testifying.

Pereira also testified that he arrested one Tipton for being drunk in the bar, describing him as noisy and weaving. On

February 6, 1952, two women and a man emerged from Brick's Place and went to a car. He arrested the women for being drunk and the man for being drunk in and about an automobile. One of the women he knew to be a narcotics user. On April 10, 1952, he saw Miss Smith and Mr. Gregory come out of Brick's Place and get in a car. He followed them to 10th and Brush Streets where they were arrested for vagrancy and lewd conduct. He had previously arrested Miss Smith several times on charges of prostitution and being a lewd person. The officer knew nothing of what they had done in Brick's Place but assumed that the contact had been made there. He did not know whether or not they had entered the bar together.

On May 9, 1952, Pereira arrested a man and woman at 1:30 a. m. for drunkenness after they had emerged from Brick's Place. On the evening of June 27, 1952, he arrested a young negress for prostitution who came out of Brick's Place accompanied by an elderly white man. On July 25, 1952, he arrested a couple for prostitution whom he observed leaving Brick's Place and on October 7, 1952, arrested a woman for soliciting after he saw her leave these premises with a man. All these women whom he arrested received jail sentences or fines except one who was confined to Napa State Home because she was a narcotics user.

Jack Garcia who operated a delicatessen and grocery at 821 Washington Street stated that he had seen dozens of people thrown out of Brick's Place, people chased out with knives and guns. He had seen prostitutes soliciting in front of his store, and observed them coming out of the bar, and then running in there from the street when a police officer approached. He had called police when fights occurred in front of Brick's Place, but the participants were usually gone when the police arrived. Two or three had occurred in the last year, and he had been in them himself.

Sergeant Risedorph of the Oakland Police Department had to reprimand the colored bouncer in the bar for standing with his arms around two colored prostitutes. He said that although prostitutes and hopheads frequented other bars in this section of the city, he had not seen them in such great numbers as in Brick's Place.

Officer Skelton observed on numerous occasions that many persons loitered in the bar without either eating or drinking. He had noticed that as soon as a service man went in, prostitutes readily became acquainted with him, and he considered it a place where these women made their contacts.

Officer Shubert of the Oakland Police stated that he had been in Brick's Place every working day while he was on that beat. He had made three arrests there, one for violation of probation, two of parties involved in a fight just outside the bar that had started inside. He had seen drunks in the bar and had arrested them.

Officer Skelton stated that he had arrested between seven and nine drunks within the premises in the last year, but within the immediate vicinity, he had arrested between 250 and 300 drunks, some of whom were patrons of Brick's Place. This was the only bar in this block.

Officer Murphy arrested two Negroes who had just left the bar and commenced a fight on the street.

Officer Berg arrested one patron within the bar for drunkenness. Both Officers Berg and Delaney observed known prostitutes and narcotics users within the bar.

Ethel Swegle, the licensee, admitted that the place was a little rough, that it was a rough place when she took it over, but that they had been trying to make a clean place out of it.

Appellant contends that the evidence in the record is insufficient to support the findings. The chief attack is against the hearsay evidence of acts of solicitation by prostitutes upon the premises. It may be said at the outset that a reading of the testimony summarized above will show that the evidence is adequate to support the first two charges concerned with fights and disturbances and intoxication.

The third charge in the accusation charges appellant with permitting known prostitutes to remain upon the premises and solicit acts of prostitution thereon. Both the board and the trial court found as a fact that the licensee had permitted such solicitation on the premises. The evidence as to the acts of solicitation in the bar appears to be both hearsay and direct evidence. The police officer who was alleged to have been solicited was never brought in to testify, nor were the police records which were available. In the first two instances objection was made, but in the following three instances there was no objection. Counsel was no doubt relying on the hearing officer's statement that he would strike this testimony if the unidentified police officer in each case was not brought in to testify. However, he should have made an objection in each instance, or have stipulated that his objection would run to this entire line of testimony. Furthermore, he could have made a motion to strike the testimony at the end of the hearing. ■ In ordinary civil

actions incompetent evidence admitted without objection is sufficient to support a finding. (*Stickel* v. *San Diego Electric Ry. Co.,* 32 Cal.2d 157 [195 P.2d 416]; *Estate of Pohlmann,* 89 Cal.App.2d 563 [201 P.2d 446]; 4 Cal.Jur.2d 388, § 534.)

Section 11513, subdivision (c), of the Government Code, which is applicable to this type of administrative hearing, provides that "Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence *but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.*" The type of hearsay admitted here was not the type admissible over objection in civil actions.

To support this finding that the third charge of the accusation had been established there must be competent evidence that solicitation took place on the premises. The case of *Stoumen* v. *Reilly,* 37 Cal.2d 713 [234 P.2d 969], has established that the fact that persons of ill repute congregate in a certain bar is not cause for revocation or even indefinite suspension of a liquor license under section 58 of the Alcoholic Beverage Control Act. Count one of the accusation in the cited case alleged, as here, that the premises were permitted to be used as a disorderly house for purposes injurious to the public morals. In *Cooper* v. *State Board of Public Health,* 102 Cal.App.2d 926 [229 P.2d 27], where hearsay records were admitted it was held that there was no error since it had been used solely for the purpose of supplementing and explaining the direct evidence. *Fox* v. *San Francisco Unified School Dist.,* 111 Cal.App.2d 885 [245 P.2d 603], seems to indicate that an objection is of significance, but in that case the hearsay was the type that was admissible over objection in civil actions, so the case does not stand for the proposition that inadmissible hearsay unobjected to is sufficient to support a finding.

However the evidence offered by Police Officer Pereira to the effect that he made arrests for solicitations that occurred within the bar on statements reported to him by another officer are direct evidence that Officer Pereira performed those acts. He testified also of his own personal knowledge that such persons received sentences for these offenses. This likewise is direct evidence. ▮ A finding cannot rest on hearsay alone, but if the hearsay evidence given by the officer may be used to supplement his direct testimony, then it may be said that the finding is supported.

■ However it is clear the direct testimony of Officer Pereira that acting on information he arrested prostitutes for solicitations on the premises and that the same prostitutes were later convicted and sentenced for these offenses is ample evidence by itself to support the board's finding on the third charge of the accusation.

This officer's testimony is direct evidence that there is a judgment of conviction based on implied findings that the prostitutes there involved were guilty of acts of solicitation on the premises here involved.

This judgment of conviction then is itself evidence that acts of solicitation for prostitution took place on the premises in question.

In our opinion there is ample evidence in the record to support the board's findings and the lower court's findings on all three charges of the accusation.

■ Appellant contends finally that the court misconstrued section 58 of the Alcoholic Beverage Control Act by indirectly holding that the word "permits" in said section may include an unknowing consent, and further, that a licensee can be held to have permitted acts constituting a violation, to occur upon evidence and a showing that the acts themselves took place. Appellant cites numerous cases from other jurisdictions to the effect that "permit" means knowledge, consent, acquiescence, willingness, as distinguished from passive sufferance. However, in *Dorris* v. *McKamy,* 40 Cal. App. 267, 274 [180 P. 645], it is said that "as defined by Webster and others, 'permit' implies no affirmative acts. It involves no intent. It is mere passivity, abstaining from preventive action."

Appellant's agents were always present in the bar. It was said in *Mantzoros* v. *State Board of Equalization,* 87 Cal.App.2d 140, 144 [196 P.2d 657], that "The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board. Such a result cannot have been contemplated by the Legislature. Even in the case of criminal statutes vicarious liability for the acts of employees is not unknown." Therefore, whatever is permitted by appellant's agents must be attributed to her.

We conclude that the trial court's judgment denying the

writ of mandate finds support in the evidence and the law and accordingly the judgment must be affirmed.

Judgment denying petition for writ of mandate affirmed.

Nourse, P. J., concurred.

DOOLING, J.—I concur. There is sufficient circumstantial evidence to support the inference that solicitation by known prostitutes was permitted in this tavern. I do not understand that this court is holding that the failure to object to hearsay evidence in an administrative proceeding to which section 11513, Government Code, is applicable would result in the hearsay evidence alone being sufficient to support a finding. The section itself makes hearsay admissible and hence no effective objection to its introduction could be interposed, and the section itself limits the probative value of such evidence: it "shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil action." I want to make it perfectly clear that this limitation on the effect of hearsay evidence in proceedings to which section 11513 is applicable, in my judgment, is not dependent upon whether or not an objection is made to its admission.

Appellant's petition for a hearing by the Supreme Court was denied July 21, 1954.