[Civ. No. 21111. First Dist., Div. Three. Jan. 24, 1964.]

JAMES SUNSERI, Plaintiff and Appellant, v. THE BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

Joseph J. Polverino, Ewart Lytton Merica, Weir, Hopkins, Donovan & Zavlaris and Robert C. Donovan for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Respondent.

SALSMAN, J.—The appellant was charged with unprofessional conduct as defined in Business and Professions Code section 2399.5 (prescribing dangerous drugs without either a prior examination or medical indication thereof). The accusation contained six counts. After a hearing respondent found appellant guilty. Respondent then issued its order revoking appellant's license, but stayed the effectiveness of the order for a period of five years, during which period appellant was placed on probation, required to refrain from the practice of medicine for a period of 180 days from the date of the order, to report periodically in person to respondent, and to file affidavits quarterly showing full and faithful compliance with all terms and conditions of probation. Thereafter appellant petitioned the superior court for a writ of mandate to set aside the order. After hearing, the superior court declined to issue the writ, and this appeal followed.

Business and Professions Code section 2399.5, under which appellant is charged, was enacted in 1959. It reads: "Prescribing dangerous drugs as defined in Section 4211, without either a prior examination of the patient or medical indication thereof, constitutes unprofessional conduct within the meaning of this chapter."

One of appellant's contentions is that the statute is unconstitutional because it is so vague and uncertain that men of common intelligence must necessarily guess at its meaning. (See *McMurtry* v. *State Board of Medical Examiners*, 180 Cal.App.2d 760, 766 [4 Cal.Rptr. 910], and cases cited.) This contention cannot be supported here.

█ All presumptions and intendments are in favor of the statute, and all doubts must be resolved in favor of its validity and not against it. (*Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 620, 636 [91 P.2d 577].) █ We will not strike it down for uncertainty if some reasonable construction can be given to the language used by the Legislature, nor will we declare it invalid because there may be some difficulty in ascertaining its exact meaning, or because of the possibility of different interpretations of its language. (See *County of Tulare* v. *City of Dinuba*, 188 Cal. 664, 677-678 [206 P. 983].) █ If the meaning of the statute can be ascertained from any source it must be upheld against the charge that it is void for uncertainty.[1]

---

[1]In seeking the meaning of a statute we may look to the legislative record relating to its enactment. Here, however, careful search of all available legislative history reveals no suggestion as to the intention of

One part of the statute here under attack prohibits prescribing a dangerous drug without a "prior examination of the patient." This language can hardly be misunderstood by a layman and certainly not by the medical profession, to which the statute is addressed. Nor do we find any fatal ambiguity in that part of the statute which, in reference to prescribing dangerous drugs, uses the language "or medical indication thereof." One definition of the word "indication" is "a symptom or particular circumstance that indicates the advisability or necessity of." (Webster's Third New International Dictionary.) Another definition is: "That which serves to indicate or point out; sign." (Webster's New Collegiate Dictionary (2d ed.).) It seems plain that the phrase "medical indication" as used in the statute simply means the existence of symptoms or the presence of satisfying evidence which suggests to a doctor the need or advisability for prescribing the use of a dangerous drug. We think the language used in the statute is sufficiently definite to provide a satisfactory standard of conduct for the medical profession whose activities it is designed to regulate, and that it is not subject to the constitutional attack leveled at it by appellant. (*Lorenson* v. *Superior Court*, 35 Cal.2d 49, 60 [216 P.2d 859]; *People* v. *Ring*, 26 Cal.App.2d Supp. 768, 771-772 [70 P.2d 281].)

Appellant's principal contention is that the findings of the respondent are not supported by the evidence and hence its order and decision are invalid. On appellant's application for the writ of mandamus the trial court was authorized to exercise its independent judgment on the evidence and decide the issue accordingly. (*Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308-309 [196 P.2d 20].) On appeal, however, we must abide by the usual standard of appellate review. (*Tabory* v. *State Personnel Board*, 208 Cal. App.2d 543, 546 [25 Cal.Rptr. 333]; *McMurtry* v. *State Board of Medical Examiners, supra*, at p. 774.) Thus, our power begins and ends with a determination of whether there is any substantial evidence to support the order and decision of respondent. If there is such evidence, we must affirm; if not we may reverse. Notwithstanding the limited scope of our review we have concluded that, in this case, no

the Legislature in enacting the statute with which we are here concerned, and we must therefore determine its meaning and purpose from the language of the statute itself.

substantial evidence supports the order and decision of respondent as to counts A, B, C, D and E, and that as to those counts, its order may not stand. This requires us to set forth the charges against appellant in detail, and to notice the evidence relied upon by respondent to support its order.

It appears from the record that the California State Board of Pharmacy was conducting an investigation into the activities of one Julienco Lucero Canseco, doing business as Lucero Pharmacy in San Jose. Two women were used in the investigation. One of these was Grace Jose, a private investigator, who used the fictitious name of Adele White; the other was Stella Sullivan, of the San Jose Police Department, who used the fictitious name of Lee Hunt. Both investigators were directed to purchase seconal from the Lucero Pharmacy. Seconal is one of the drugs defined as a dangerous drug in Business and Professions Code section 4211. Investigation of the activities of the pharmacist ultimately involved appellant, as will appear from the charges and the evidence.

Six charges were made against appellant by respondent. In effect, each charged that appellant prescribed a dangerous drug without either a ''prior examination'' or ''medical indication thereof.'' The charges were, in summary:

*Count A*: That on May 17, 1960, at the request of Canseco, appellant prescribed seconal for Grace Jose.

The evidence to support this count was that Grace Jose went to the Lucero Pharmacy with Al Jerez. Jerez asked Canseco for the refill of a prescription for seconal. Canseco made a telephone call, asked for Dr. Sunseri, wrote down a number, looked in the telephone book, and then dialed again. He talked with someone on the phone and said that a patient wanted a refill of a prescription for seconal. Grace Jose spoke to Canseco and said: ''Find out if I can get some too.'' Canseco then said: ''He has a friend here. Could she have some too.'' After this telephone conversation Canseco said to Jerez and Grace Jose: ''I will give you 15 each.''[2]

*Count B*: That on June 2, 1960, appellant, at the request of Canseco, prescribed seconal for Grace Jose.

---

[2]Pertaining to count A and to all succeeding counts, prescription blanks were introduced into evidence. These blanks were for seconal and were filled out by the pharmacist, who entered the name of Dr. Sunseri as the prescribing physician. It should be noted that there is only hearsay evidence that seconal was actually dispensed by the pharmacist. However, this is immaterial to the charges against Dr. Sunseri, since section 2399.5 prohibits ''prescribing'' dangerous drugs.

The evidence was that Grace Jose returned to the pharmacy and asked for seconal. Canseco called someone on the telephone and referred to the person called as "Dr. Sunseri." Canseco stated it was a refill prescription. After this conversation Canseco refilled Grace Jose's prescription.

*Count C*: That on July 28, 1960, appellant, at the request of Canseco, prescribed seconal for Stella Sullivan and Grace Jose.

The evidence was that Grace Jose and Stella Sullivan came to the drugstore and Grace Jose asked for a refill of her prescription. Canseco called someone by telephone. Neither Grace Jose nor Stella Sullivan saw the number dialed. However, Grace Jose was asked to talk to the person on the other end of the line, and she testified that the person said he was Dr. Sunseri. Grace Jose told that person she wanted a refill of her prescription for seconal "to relax" and "to calm me down." Grace Jose also said "I have a friend with me would like to get some also." Grace Jose testified that the person on the other end of the line said "O.K." Canseco then refilled Grace Jose's prescription and gave Stella Sullivan capsules described in the hearsay testimony as seconal.

*Count D*: That on August 18, 1960, appellant, at the request of Canseco, prescribed seconal for Stella Sullivan.

The evidence was that Stella Sullivan returned to the drugstore on the date named in this count, and asked for a refill. Canseco made a telephone call but again Stella Sullivan did not see the number dialed, nor did she hear the name of any doctor mentioned. She heard Canseco say that Lee Hunt (Stella Sullivan's fictitious name) wanted a refill. After this telephone conversation Canseco refilled Stella Sullivan's prescription.

*Count E*: That on September 16, 1960, appellant, at the request of Canseco, prescribed seconal for Stella Sullivan.

The evidence was that on this date Stella Sullivan returned to the drugstore and asked for a refill of her prescription. On this occasion Canseco did not even mention appellant's name, or make any telephone call. He did, however, give Stella Sullivan 120 capsules similar to those previously given to her in refilling her prescription for seconal.

*Count F*: That on November 17, 1960, appellant, at the request of Canseco, prescribed seconal for Stella Sullivan.

The evidence here was that Stella Sullivan returned to the drugstore and asked Canseco for a refill. Canseco made a telephone call to someone and stated that the request was for

a refill. After this telephone conversation Canseco gave Stella Sullivan 60 capsules similar to those previously dispensed by him.

From the brief statement of the evidence relating to the various charges against appellant it is clear that nothing but hearsay supports counts A, B, C, and D. As to counts A, B and D, the pharmacist made a telephone call to someone, but neither Grace Jose nor Stella Sullivan saw the number dialed. Neither identified appellant as the person to whom the call was made. The pharmacist did address the person called as ''Dr. Sunseri'' but this statement is pure hearsay.

As to count E, the pharmacist made no telephone call to anyone and there is nothing whatever to connect appellant with the prescription given to Stella Sullivan on the date named in this count.

As to count C, Grace Jose did talk to someone by telephone who, according to her testimony, identified himself as Dr. Sunseri. However, she did not place the call herself and could not testify as to the number dialed. She did not testify that she knew Dr. Sunseri personally, or could recognize his voice over the telephone. That part of her testimony, therefore, which identifies appellant as the person to whom she spoke is hearsay. It is argued, however, that appellant has admitted he talked to Grace Jose on the date mentioned in count C. A fair reading of appellant's testimony shows that he did not in fact make any such admission. His testimony was: ''Q. . . . directing your attention to July 28th, 1960, do you recall having prescribed 15 seconal for a Stella Sullivan also known as Lee Hunt and for Adele White also known as Grace Jose? A. July the 28th, 1960 — I don't recall it. If she says she spoke to me I must have; I don't recall the occasion. Q. Well, when you say you must have spoken to her, whom do you mean that you must have — A. Mrs. White. Q. Mrs. White. A. If she claims she spoke to me over the phone. Q. Yes, now do you recall — that is from any custom or habit of yours with reference to your practice as to making a prescription over the phone — do you recall any conversation that you might have had with reference to Adele White on that date, that is July 28th? A. No. Do I recall any conversation with Adele White on that date? Q. Yes. A. No, I don't. Q. You don't recall any conversation? A. I don't recall the conversation, but—— . . .''

█ Hearsay evidence is admissible in an administrative proceeding. (Gov. Code, § 11513, subd. (c).) The use of such testimony is limited however, and it cannot alone support a

finding. (*Walker* v. *City of San Gabriel*, 20 Cal.2d 879, 881-882 [129 P.2d 349, 142 A.L.R. 1383]. It may be used to supplement other evidence and thus aid in the support of findings made by an administrative board. (*Nardoni* v. *McConnell*, 48 Cal.2d 500, 504-505 [310 P.2d 644]; Witkin, Cal. Evidence, §§ 10, 12-14.) ▮ Here, however, there is no direct evidence of appellant's participation in the events charged in counts A, B, C, D and E. Since respondent's findings and order as to counts A, B, C and D rest on hearsay evidence only and count E is without any support in the evidence, it is apparent its order as to these counts cannot be sustained.

Canseco, who could have offered direct evidence on the question of identity of the person to whom he spoke in each of the telephone conversations mentioned in the evidence relating to counts A, B, C and D, was not called as a witness. The record before us does not explain why his testimony was not offered in support of the charges in the accusation. ▮ The respondent had the burden of proof. No affirmative duty rested upon appellant to produce the testimony of Canseco, and we cannot indulge in any presumptions unfavorable to him because of the absence of this evidence.

▮ At the close of the administrative hearing appellant was asked if he had ever received a fee for prescribing any drug by telephone. One board member asked if appellant had received fees from any pharmacy other than Lucero Pharmacy. Appellant readily admitted that "once in a great while" he had prescribed by telephone and received fees for such services. It is argued that from these questions and appellant's answers respondent could infer that appellant prescribed as charged in counts A, B, C, D and E, and that this inference supports the testimony of Grace Jose and Stella Sullivan and is sufficient to uphold respondent's order. We cannot agree. In the exchange of questions and answers between members of the board and appellant, no mention was made of the kind or character of drugs prescribed, whether dangerous or not, and nothing was said concerning the circumstances under which such prescriptions were given. Appellant was not asked if prescriptions given over the telephone were original prescriptions or refill prescriptions, or if he spoke directly to the patient or only to the pharmacist. It does appear that, in prescribing for patients who could not speak English, appellant sometimes used Canseco as an interpreter to aid in an understanding of the patient's com-

plaints. On the record before us, however, no inference may be drawn from the fact that because on other occasions appellant prescribed by telephone, he in fact prescribed the dangerous drugs mentioned in the first five counts of the accusation filed with respondent.

 Substantial evidence supports respondent's findings as to count F, however. Here the evidence is that Canseco called appellant and reported that Stella Sullivan wanted a refill of her prescription for seconal. Appellant has denied issuance of any original prescription for Stella Sullivan, and as we have pointed out, respondent's evidence as to such original prescription is hearsay. Appellant admits receiving the telephone call from Canseco on November 17, 1960, requesting a refill of Stella Sullivan's previous prescription, and further admits authorizing it. The record is clear that, at the time of Canseco's request, no symptoms or complaints of Stella Sullivan were given to appellant and none were known to him. He did not know if Stella Sullivan was a man or woman, and in fact stated to investigators who first interviewed him that he thought ''Lee Hunt'' (the ambiguous name used by Stella Sullivan in her operations) was a man. Without any evidence to justify it, and with nothing more than Canseco's request by telephone, appellant prescribed a dangerous drug. Thus, at the time appellant prescribed he had no knowledge of his patient and there was no medical indication of any need for a dangerous drug. Substantial evidence, therefore, supports respondent's findings and order as those findings and order relate to count F.

Appellant also contends that respondent abused its discretion in its proceedings and that he has been denied due process and equal protection of the laws, in violation of both state and federal Constitutions. These contentions are not supported by the record, are entirely without merit, and do not require discussion here.

 The respondent's order imposing a penalty upon appellant is based upon findings of unprofessional conduct as charged in all counts of the accusation. We have found all counts except count F to be unsupported. Under such circumstances it is proper to reverse with directions to the administrative agency to redetermine its penalty as to that portion of the accusation which is supported by substantial evidence. (See *Bonham* v. *McConnell*, 45 Cal.2d 304, 306 [288 P.2d 502]; *Cooper* v. *State Board of Medical Examiners*, 35 Cal.2d 242, 252 [217 P.2d 630, 18 A.L.R.2d 593]; *McMurtry* v. *Board of Medical Examiners, supra,* at p. 776.)

The judgment is reversed. The trial court is directed to issue its writ of mandamus directing respondent to set aside its findings of unprofessional conduct made against appellant insofar as those findings and the order based thereon relate to counts A, B, C, D and E of the accusation, and further directing respondent to reconsider its order imposing a penalty upon appellant.

Appellant has also attempted to appeal from the trial court's order denying his motion to amend his petition for the writ. That order is not separately appealable. We have reviewed the proposed amendment, however, and the offer of proof made in support of it. The amendment, and the offered evidence were without relevance to the issues before the court and the trial court's ruling was correct. The purported appeal from the order denying appellant's motion to amend is therefore dismissed.

Neither party shall recover costs on appeal.

Draper, P. J., and Devine, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1964.