[Civ. No. 13215. Third Dist. June 8, 1972.]

WILLIE MARTIN, JR., Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

**COUNSEL**

Blackmon, Isenberg, Moulds & Blicker for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**JANES, J.**—The Department of Corrections dismissed appellant Martin from his civil service position as a correctional officer at San Quentin

Prison on July 24, 1970. After an administrative hearing, the State Personnel Board upheld the dismissal. Martin then filed in the Sacramento Superior Court a petition for a writ of mandate to compel his reinstatement with back pay. He appeals from the judgment denying the writ.

In its written notice of punitive action (Gov. Code, § 19574), the Department of Corrections charged Martin with willful disobedience of a departmental rule which provided in relevant part that "Employees shall not take or send either to or from any inmate any message verbal or written . . . except such as is necessary in transacting the business of the institution."

After taking evidence, the hearing officer made written findings, among which the following are pertinent: "On or about March 2, 1970 a San Quentin Prison inmate wrote an unauthorized letter which he wanted smuggled out of the institution. This letter was given to [Martin] by another inmate with the understanding that [Martin] would have it delivered through channels other than the regular channels for handling inmate mail. [Martin] did not in fact mail or deliver the letter but instead kept it until it was discovered in his room on the institution grounds on July 2, 1970. [Martin's] conduct in accepting this unauthorized inmate communication was known to him at the time to be a violation of the Director's Rules and constitutes willful disobedience within the meaning of Government Code Section 19572(o)." The findings were adopted by the State Personnel Board. On this appeal, Martin makes a two-pronged attack on those findings.

## I.

█ Martin first contends that the superior court was required to undertake a de novo review of the evidence at the administrative hearing, and that the court's duty was to exercise its independent judgment as to the weight of that evidence. Based upon such a de novo evaluation of the administrative record, he argues that the findings were against the weight of the evidence.

In support of his contention, Martin cites *Bixby* v. *Pierno* (1971) 4 Cal. 3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], in which it was stated that trial courts must exercise independent judgment upon the weight of the evidence in the administrative record in cases where the administrative decision substantially affects fundamental vested rights, such as the right to practice one's trade or profession. (*Id*. at pp. 143-144; cf. *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16-17 [95 Cal.Rptr. 329, 485 P.2d 529].)[1]

---

[1]For a discussion of the question whether a person can have a vested right in public employment, see *Patton* v. *Board of Harbor Commissioners* (1970) 13 Cal. App.3d 536, 540-541 [91 Cal.Rptr. 832].

Martin's reliance upon *Bixby* is misplaced. That case was concerned with the review of decisions of statewide agencies which are *not* constitutionally authorized to exercise judicial functions. (4 Cal.3d at pp. 137-138.) The *Bixby* opinion expressly pointed out that it did not involve "a statewide agency upon which the California Constitution has specifically conferred adjudicative powers." (*Id.* at p. 141, fn. 7.)

In contrast, the factual determinations of the State Personnel Board—a statewide agency which was created by, and which derives its adjudicating power from, the state Constitution—"are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence." (*Shepherd* v. *State Personnel Board* (1957) 48 Cal.2d 41, 46-47 [307 P.2d 4]; see also *Pereyda* v. *State Personnel Board* (1971) 15 Cal.App.3d 47, 50 [92 Cal.Rptr. 746]; *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762]; *Neely* v. *California State Personnel Bd.* (1965) 237 Cal.App.2d 487, 488-489 [47 Cal.Rptr. 64].) "The substantial evidence rule is equivalent to the concept of ' "substantial evidence in the light of the whole record." ' [Citations.]" (*Coomes* v. *State Personnel Board* (1963) 215 Cal.App.2d 770, 773 [30 Cal.Rptr. 639].)

When it reviews the evidence before the State Personnel Board, the superior court exercises the same function as this court. (*Neely* v. *California State Personnel Bd., supra,* 237 Cal.App.2d at p. 489.) Neither court can reweigh the evidence. (*Gubser* v. *Department of Employment* (1969) 271 Cal.App.2d 240, 245 [76 Cal.Rptr. 577].) "In following the substantial evidence rule we are obliged to consider the evidence in the light most favorable to the Board, giving to it the benefit of every reasonable inference and resolving all conflicts in its favor." (*Gee* v. *California State Personnel Bd., supra,* 5 Cal.App.3d at p. 717.) "Inferences based upon circumstantial evidence are sufficient to support a finding." (*Pereyda* v. *State Personnel Board, supra,* 15 Cal.App.3d at p. 50.)

## II.

Martin's second contention is that, under the substantial evidence rule, the Board's findings were without sufficient support because they were based solely upon multiple hearsay. We hold the contention to be meritorious even though, at the administrative hearing, Martin's attorney made no objections on the ground of hearsay. The relevant evidence at the hearing was as follows:

On July 2, 1970, prison security officers searched Martin's room in the bachelor officers' quarters at San Quentin. During the search, they found a letter in a sealed envelope at the bottom of a box of greeting cards

in the drawer of Martin's night table. The letter was dated "3-2, 1970." It had been written by an inmate named Brown, who had been transferred from San Quentin to another institution on March 23, 1970. The envelope bore a San Francisco address.

Prison officials testified that two unidentified inmates, serving as room attendants, customarily had a key and access to Martin's room.

On July 7, 1970, two security officers interviewed Brown in San Luis Obispo, where he was then incarcerated. One of his interrogators—Officer Crandall—testified without hearsay objection that Brown told them he (Brown) had given his letter to an inmate named Rogers; that Brown said that Rogers had told him (Brown) that he (Rogers) would give the letter to Martin to "take out"; and that Brown also claimed to have seen Martin passing "hot dog" books—i.e., "girlie" books—to Rogers.

Officer Smith—the other officer who questioned Brown on July 7— was not called as a witness. An official written report from Smith was put into evidence. In relevant part, Smith's report stated: "When questioned, Brown admitted that he had written the letter and had given it to another inmate who would see that it got out. Further questioning revealed that the other inmate was Rogers, . . . and Rogers was to give it to Officer W. Martin. Brown also admitted that he had rented 'Hot Dog' books which he had seen Officer W. Martin give to inmate Rogers . . . . [¶] When the writer questioned inmate Rogers, he denied any knowledge and admitted nothing."

Smith's report contained hearsay and conclusions. (See Witkin, Cal. Evidence (2d ed. 1966) § § 590-591, pp. 562-563.) Martin's appellate brief asserts that he made a "timely objection" to the introduction of the report into evidence. In point of fact, however, his so-called "objection" was his attorney's statement "I am kind of curious about the purpose of it [Smith's report] being offered, and I *would* impose an objection *unless* I hear an explanation." (Italics added.) Even if counsel's remark may be construed as an objection, it was an insufficient general one which specified no particular ground. (See Witkin, Cal. Evidence (2d ed. 1966) § 1288, pp. 1191-1192.)

Inmate Rogers was not called as a witness. Brown testified that he (Brown) "was to give [the letter] to another inmate and he was to give it to another inmate" to get out. He further testified, "There was no free man [non-inmate] involved that I knew of." He admitted telling Crandall and Smith that he had given the letter to "an inmate," but claimed that he "didn't tell them anything about the inmate." He denied bringing up Martin's name during the July 7 interview; he testified that, when the

officers asked him how Martin had gotten the letter, he told them "I didn't know he had it." He denied telling Crandall and Smith that he had observed Martin giving another inmate "hot dog" books.

On July 10, 1970, when Martin's superiors asked him how the letter came to be in his greeting card box, he replied that he did not know it was there, had not put it there, and did not know how it got there. Martin took the witness stand and denied seeing the letter in his room or having any knowledge about how the letter got into his room. His attorney stipulated that Martin had "constructive" knowledge of the departmental rule prohibiting the unauthorized transmission of inmates' messages.

On this appeal, Martin's contention that the findings are not based on substantial evidence is, in essence, an attack upon Officer Crandall's hearsay on hearsay testimony.[2] As Martin's brief puts it, "Officer Phillip R. Crandall testified that Inmate Brown said that Rogers said that Officer Martin would carry out the letter . . . . The traditional unreliability of multiple hearsay is further exacerbated here by the fact that two of the alleged [hearsay] declarants are convicted felons."

Martin's administrative hearing was governed by section 11513 of the Government Code. Subdivision (c) thereof provides: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. *Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.* The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing, and irrelevant and unduly repetitious evidence shall be excluded." (Italics added.)[3]

---

[2] As hereinbefore mentioned, Officer Smith's written report said that "Further questioning [of Brown] revealed that . . . Rogers was to give [the letter] to Officer W. Martin." Unlike Crandall's testimony, Smith's report was silent as to whether Brown was speaking from personal knowledge or was merely relating what Rogers had told him about Martin. Since Smith's report alleged nothing against Martin which was not testified to by Crandall, our discussion herein as to the effect of Crandall's testimony is likewise dispositive of Smith's report.

[3] With regard to the hearing on the cause for dismissal of a state civil service employee, Government Code section 19578 provides in relevant part that "Such hearing shall be conducted in accordance with the provisions of Section 11513 of the Government Code, *except that* the employee and other persons may be examined as provided in Section 19580 [making Evidence Code section 776 applicable], and

In *Swegle* v. *State Board of Equalization* (1954) 125 Cal.App.2d 432 [270 P.2d 518], and in *Benedetti* v. *Dept. Alcoholic Bev. Control* (1960) 187 Cal.App.2d 213 [9 Cal.Rptr. 525], there is dictum which suggests that, under section 11513, a finding cannot be based solely upon hearsay which is received without objection at the administrative hearing, if the hearsay would have been inadmissible over objection in a civil action. Such seems to have been the holding in *Sunseri* v. *Board of Medical Examiners* (1964) 224 Cal.App.2d 309 [36 Cal.Rptr. 553], where the hearsay evidence was unrefuted, and where the opinion makes no mention of objections to the evidence.

However, in *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App. 2d 124 [40 Cal.Rptr. 171], where the hearsay was uncontradicted and was received without objection, the court—without distinguishing *Sunseri* —held that under section 11513 the administrative decision *could* rest (apparently exclusively) on the hearsay. None of the four cases relied on by *Savelli* support its holding. In three of them, the proceedings were not governed by section 11513. (See *Merchant etc. Assn.* v. *Kellogg E. & D. Co.* (1946) 28 Cal.2d 594, 599 [170 P.2d 923] (civil action); *Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 726-727 [160 P.2d 816] (unauthoritative also because no rule stated for hearsay admitted without objection); *Fox* v. *S. F. Unified School Dist.* (1952) 111 Cal.App. 2d 885, 891-892 [245 P.2d 603] (hearing procedure referred to in companion case of *Tucker* v. *S. F. Unified School Dist.* (1952) 111 Cal.App.2d 875, 880 [245 P.2d 597]; *Fox* also unauthoritative because hearsay there was type admissible over objection in civil actions).) In the fourth case relied on by *Savelli,* the relevant finding was not based solely on hearsay, and, although section 11513 was applicable, the section was not mentioned. (See *Griswold* v. *Dept. Alcoholic Bev. Control* (1956) 141 Cal.App.2d 807, 810-811 [297 P.2d 762].)

The *Swegle, Benedetti,* and *Sunseri* pronouncements were rejected in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1970) 8 Cal.App.3d 1009 [87 Cal.Rptr. 908], where the court said, "It suffices for this case to rule that

the parties may submit all *proper and competent* evidence against or in support of the causes." (Italics added.)

It is an open question as to whether the broad rules of evidence prescribed by section 11513 (see text above) are qualified in civil service dismissal hearings by the reference to "proper and competent evidence" in section 19578. (Cf. *Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383]; *Black* v. *State Personnel Board* (1955) 136 Cal.App.2d 904, 910 [289 P.2d 863]; *Dyment* v. *Board of Medical Examiners* (1928) 93 Cal.App. 65, 68-70 [268 P. 1073]; *Thrasher* v. *Board of Med. Examiners* (1919) 44 Cal.App. 26 [185 P. 1006].) The parties to this appeal have not briefed that question, and its present resolution is unnecessary to the determination of this appeal.

hearsay, which is admitted without objection, will have *probative value unless there is some evidence, admissible in administrative proceedings* [citing section 11513], *to the contrary.* In other words, unless objected to, it will serve to shift the burden of producing evidence of the existence or nonexistence of the fact disclosed." (8 Cal.App.3d at p. 1020.) (Italics added.) *Kirby* followed and quoted the decision in *Savelli,* notwithstanding *Savelli's* lack of precedential support. As did *Savelli,* the *Kirby* case cited *Griswold* (distinguished *supra*); and *Kirby* also relied on *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 63-64 [70 Cal.Rptr. 172] (informal hearing not governed by section 11513 (264 Cal.App.2d at pp. 59-60)).

*Kirby* criticized the concurring opinion in *Swegle,* which had pointed out that "The section [11513] itself makes hearsay admissible and hence *no effective objection to its introduction could be interposed,* and *the section itself limits the probative value of such evidence:* it 'shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil action[s].' " (125 Cal.App.2d at p. 439.) (Italics added.) The concurring justice in *Swegle* was of the view that "this [statutory] limitation on the effect of hearsay evidence in proceedings to which section 11513 is applicable . . . is not dependent upon whether or not an objection is made to its admission." (*Ibid.*) In declining to adopt the same view, *Kirby* reasoned that the *Swegle* concurring opinion "leaves the proponent [of the hearsay] with the alternative of loading up the record with what may be redundant testimony on what appears to be an uncontested issue, or taking the risk that some of the testimony upon which he relies will be found objectionable on review. If the adversary wishes to contest a particular issue and force the proponent to produce further evidence, or lose on failure to do so, it is no hardship to require him to assert a hearsay objection at the hearing so that it can then be determined if 'the evidence would be admissible over objection in civil actions' and so 'sufficient in itself to support a finding.' " (8 Cal.App.3d at pp. 1019-1020.)

*Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531 [92 Cal.Rptr. 525], was decided by the same court that decided *Savelli* and *Kirby,* and it relied on the same authorities as those cases. Dictum in *Borror* indicates that no limitation of *Savelli* was intended by the court when, in *Kirby,* it merely ascribed "probative value" to unobjected hearsay. The court in *Borror* said, "In *Kirby* we pointed out that hearsay, which is admitted without objection, is *sufficient in itself to support a finding* unless there is some evidence, admissible in administrative proceedings, to the contrary." (15 Cal.App.3d at p. 546.) (Italics added.)

In the case at bench, however, there *was* "evidence . . . to the contrary" of Crandall's multiple hearsay: Martin testified that he had no knowledge as to how the letter got into his room. Moreover, we are persuaded that the reasoning in *Kirby* is self-defeating, and that *Savelli, Kirby,* and *Borror* run counter to the plain meaning of section 11513, subdivision (c).

The practical effect of *Kirby* is to overload the administrative record with premature objections which will be routinely denied. *First,* the objections required by *Kirby* are premature because, until the close of evidence, the hearing officer cannot determine the scope and credibility of the evidence which is *not* of a hearsay nature. If a finding can be made on the basis of such other evidence, as supplemented and explained by the hearsay, there will be no necessity for the hearing officer to decide whether the hearsay "would be admissible over objection in civil actions" (§ 11513, subd. (c)). *Second,* the objections required by *Kirby* will be routinely denied because section 11513, subdivision (c), provides that any relevant hearsay "*shall* be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs. . . ." (Italics added.)

It is axiomatic that, in disciplinary administrative proceedings, the burden of proving the charges rests upon the party making the charges. (*Steen* v. *City of Los Angeles* (1948) 31 Cal.2d 542, 547 [190 P.2d 937]; *La Prade* v. *Department of Water & Power* (1945) 27 Cal.2d 47, 51 [162 P.2d 13]; *Sunseri* v. *Board of Medical Examiners, supra,* 224 Cal. App.2d at p. 317; *Johnston* v. *City of Daly City* (1958) 156 Cal.App.2d 506, 515 [319 P.2d 756].) Where such proceedings are commenced under the Administrative Procedure Act or pursuant to the statutes governing civil service separations, the Legislature has declared that *all allegations* of the accusation or notice of punitive action are deemed denied by a notice of defense or answer which does not expressly admit them. (Gov. Code, § 11506, subd. (b), and § 19575.) In effect, *Kirby* would nullify this legislative declaration by requiring a hearsay objection if the party against whom hearsay is offered "wishes to contest a particular issue" to which the hearsay is relevant. (8 Cal.App.3d at p. 1020.)

▉ Section 11513, subdivision (c), is unambiguous. Contrary to the *Savelli, Kirby,* and *Borror* cases, the statute says nothing about hearsay objections; and, where the hearsay is relevant and such as could be relied on by responsible persons, the statutory mandate that such hearsay be admitted is not compatible with the need for objection. Similarly, the statute precisely describes the conditions under which hearsay will support a find-

ing; and—unlike *Kirby* and *Borror*—section 11513 does not vary those conditions when "there is some evidence, admissible in administrative proceedings, to the contrary." The terms added to subdivision (c) by *Savelli, Kirby,* and *Borror* appear to us to emasculate its plain meaning. "The intent of the Legislature must be ascertained from the language of the enactment and where, as here, the language is clear, there can be no room for interpretation." (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908].)

Where section 11513 is applicable, the function of hearsay as substantial evidence is delimited by the section itself. Subdivision (c) declares that hearsay, unless admissible over objection in civil actions, "shall not be sufficient in itself to support a finding. . . ." In ascribing significance to the absence of objection, the *Savelli, Kirby,* and *Borror* cases fail, in our view, to distinguish between admissibility and substantiality. If evidence (here, by statute) has insufficient probative value to sustain the proposition for which it is offered, the want of objection adds nothing to its worth and it will not support a finding. (*Kitchel* v. *Acree* (1963) 216 Cal.App.2d 119, 124 [30 Cal.Rptr. 714].)

In *Edison Co.* v. *Labor Board* (1938) 305 U.S. 197 [83 L.Ed. 126, 59 S.Ct. 206], the court considered a statute which, for administrative hearings, provided that "the rules of evidence prevailing in courts of law and equity shall not be controlling." The court said, "The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. [Citations.] But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. *Mere uncorroborated hearsay or rumor does not constitute substantial evidence.*" (305 U.S. at pp. 229-230 [83 L.Ed. at p. 140].) (Italics added.) The *Edison Co.* case was followed and quoted in *Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383], where, apparently without objection, hearsay charges were received by a city council and constituted the sole evidence against a licensee. In holding that the petitioner's license should not have been revoked, the state Supreme Court said, "There must be substantial evidence to support such a board's ruling, and hearsay, unless specially permitted by statute, is not competent evidence to that end." (20 Cal.2d at p. 881.) (See also *Rudolph* v. *Athletic Commission* (1960) 177 Cal.App.2d 1, 11-12 [1 Cal.Rptr. 898].)

The decision in *Walker* was reached without the support of an explicit

statute like section 11513. It follows that here, where the section is applicable, Crandall's multiple hearsay was not sufficient in itself to support the board's findings. Since the evidence fails in quantitative substantiality when measured against subdivision (c), it is unnecessary for us to determine whether, under or apart from the statute, the inherent unreliability of hearsay on hearsay bars its qualitative consideration as substantial evidence. (Cf. Evid. Code, § 1201; *People* v. *Lew* (1968) 68 Cal.2d 774, 778 [69 Cal.Rptr. 102, 441 P.2d 942]; *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 376 [55 Cal.Rptr. 23, 420 P.2d 735].)

In reaching this conclusion, we reject the Attorney General's argument that Martin's "unexplained possession of [the letter] *in itself* comprises substantial evidence to uphold the Board's decision." (Original italics.) Martin *gave* an explanation; he testified that he did not know how the letter got into his room. The board's disbelief of his testimony could not create affirmative evidence to the contrary. (*Pereyda* v. *State Personnel Board, supra,* 15 Cal.App.3d at pp. 52-53; *Oldenburg* v. *Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742 [314 P.2d 33].) Martin's explanation could not be treated as untrue unless its falsity was established by circumstances other than the mere presence of the letter; absent proof of such falsity, the fact that the letter was in his room was not probative of *the manner in which it got there.* (*People* v. *McFarland* (1962) 58 Cal.2d 748, 757 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Golembiewski* (1938) 25 Cal. App.2d 115, 117 [76 P.2d 717].) Crandall's hearsay alone could not prove the falsity of Martin's explanation because, if it were allowed such effect, the hearsay would not be merely "supplementing or explaining other evidence" (§ 11513, subd. (c)), but would be imparting—to the presence of the letter—*probative value* on the issue whether the letter had been given to Martin by an inmate. The effect of the hearsay would thus be to elevate the presence of the letter to the status of "other evidence" (§ 11513, subd. (c)). Such bootstrapping is impermissible here since, to allow it, would leave the crucial findings still supported by hearsay alone.

Regardless of whether it would have been "admissible over objection in civil actions" (§ 11513, subd. (c)), the hearsay evidence that Brown had seen Martin passing "hot dog" books to Rogers—although probative of Martin's disposition toward Rogers—had no tendency to prove Martin's connection with the letter. Brown's testimony and hearsay statements together showed that Brown had given the letter to Rogers; the latter circumstance, coupled with the matter of the "hot dog" books, at most raised a suspicion that Rogers had transmitted the letter to Martin. The case against Martin rests upon the evidence of what Rogers told Brown (itself

hearsay on hearsay); and, since Rogers' statement did not fall within "an exception to the hearsay rule" (Evid. Code, § 1201), it would have been inadmissible over objection in a civil action.

*People* v. *White* (1969) 71 Cal.2d 80 [75 Cal.Rptr. 208, 453 P.2d 600], furnishes no support to the Attorney General's argument. In *White* the offense was unlawful *possession* (of marijuana); in the case at bench, Martin's alleged offense was not that he wrongfully possessed the letter but that he improperly *received it from an inmate*. Here, as in *People* v. *McFarland, supra,* 58 Cal.2d at page 757, the question is whether it is permissible to infer *a particular mode of acquisition*. The *McFarland* case makes clear that, where the party charged disclaims knowledge that property was on his premises, it cannot be inferred that he wrongfully acquired such property unless the falsity of his disclaimer is established by circumstances other than the mere presence of the property. In *People* v. *White, supra,* the falsity of the defendant's disclaimer was shown by evidence that the contraband was *in plain view* in his house and that he was inside the house at the time of the search. (71 Cal.2d at p. 82.) *White* is therefore in harmony with *McFarland*.

The judgment is reversed with directions to the superior court to issue the peremptory writ as prayed.

Richardson, P. J., and Regan, J., concurred.

A petition for a rehearing was denied July 5, 1972, and respondents' petition for a hearing by the Supreme Court was denied August 9, 1972. Peters, J., was of the opinion that the petition should be granted.