[Crim. No. 5216. Second Dist., Div. One. Oct. 5, 1954.]

THE PEOPLE, Respondent, v. JOSEPH MICHAEL FOWZER, Appellant.

Paul K. Duffy for Appellant.

Edmund G. Brown, Attorney General, and Jay L. Shavelson, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County defendant was charged in Count I with the offense of forgery (Pen. Code, § 470), and in Count II with the crime of grand theft (Pen. Code, § 487, subd. I). Count I alleged that the defendant forged a certain check in the amount of $760, and that he passed the same knowing that said check was forged, and with the intent to defraud. Count II alleged that the defendant did wilfully and fraudulently take and steal the foregoing check.

After the entry of not guilty pleas to both counts the cause proceeded to trial before a jury resulting in verdicts finding defendant guilty as charged in both counts of the information. Following denial of his motion for a new trial defendant was

sentenced to state prison on each count, the sentences to run concurrently. From the judgment of conviction and from the order denying his motion for a new trial defendant prosecutes this appeal.

The record reflects that the following is a fair epitome of the facts surrounding this prosecution. Upon the illness and hospitalization of his child, William E. Henry assigned two insurance policies to the Los Angeles County Department of Charities, for collection and payment for medical attention. Since both policies were paid in full, steps were taken by the department to convey the excess amount to the insured. A warrant for $760 was thus drawn upon the county treasurer and mailed to the insured's last known address. The insured was not at this address and the warrant was returned. The defendant, who was employed by the county as a collection investigator, was asked to help locate Mr. Henry. He reported a telephone conversation in which Mr. Henry requested that the warrant be remailed to the first address. The warrant was sent by registered mail, and picked up at the post office by an individual identifying himself as William E. Henry, and signing the receipt "W. E. Henry." The handwriting expert testified that this receipt was actually signed by defendant.

The warrant was then endorsed with the names of Mr. Henry (the payee), Walter G. Stennett (a close acquaintance of defendant's), and Miss Corrine Olazebal (defendant's then fiancée and present wife), and deposited in the latter's account. The handwriting expert testified that Mr. Henry's name was forged upon the warrant by defendant, but was less certain as to the other two signatures. The expert also testified that defendant had executed part of the bank deposit slip with which the warrant was deposited.

In addition, there was evidence that defendant attempted to get possession of the check before it was remailed, and that Mr. Henry's file was stolen from the Department of Charities by an unknown person and later turned up at Mr. Stennett's apartment at which defendant had formerly resided.

As a witness in his own behalf defendant denied that he signed the name of the payee to the warrant or the signatures of the other endorsers contained thereon. As to the deposit slip which contained the item of $760, the amount of the warrant here in question, defendant testified that he frequently made deposits for Miss Olazebal, and that her name as printed on the deposit slip, "looks very much like mine, but I can't

state for sure.'' He denied, however, that he made any deposit of $760, because ''I certainly would remember an amount like that, I didn't deposit it.'' Defendant also denied that he signed the name ''W. E. Henry'' on the postal return register receipt or that he ever received a registered letter in Long Beach.

The witness Corrine Olazebal, in whose name and bank account the warrant in question for $760 was deposited, testified that she did not make the deposit nor did she have any knowledge that anyone was making such a deposit to her account.

As his first ground for reversal appellant asserts that the admission of certain bank records was error because of the failure of the prosecution to produce the custodian of such records and that the evidence given thereon was admitted without sufficient foundation therefor and amounted only to conclusions on the part of the witness.

In this regard it appears that Harlan W. Adolph testified he was assistant cashier at the Bank of America branch in which the warrant was allegedly deposited, and that he had access to the records of that bank. He identified People's Exhibits 6 and 7 as the bank's ledger record of Miss Olazebal's account, and Exhibit 8 as a letter from the main branch requesting reimbursement from her, due to the forgery of the payee's signature on the warrant. When these records were offered in evidence objection was interposed by appellant. Appellant objected on the ground that ''these records were not produced by an individual who was the custodian of the business records, and therefore there has not been sufficient confirmation as required by the Civil Code. We have this individual that works for the bank, but we don't have anyone to show who was the custodian.'' The objection was overruled.

From the foregoing it is manifest that the only objection made in the trial court to the admission into evidence of these records was that they were not produced by the custodian thereof, and, for the first time, appellant urges on appeal that the records were inadmissible upon the additional grounds that there was no testimony as to their mode of preparation or that they were made in the regular course of business, at or near the time of the event testified to, as required by section 1953f of the Code of Civil Procedure.

It is well settled that before an appellate tribunal will give consideration to an objection to evidence, the proper ground for its exclusion must have been clearly specified to

the trial court (*People* v. *Renek*, 105 Cal.App.2d 277, 283 [233 P.2d 43]). And this is especially true, where, as in the instant case, the objection could have been cured by the party offering the testimony if the reason for which it had been objected to had been given in the trial court (*People* v. *Tolmachoff*, 58 Cal.App.2d 815, 826 [138 P.2d 61]). ■ Where, as in the case now engaging our attention, the proffered testimony is claimed to be imperfect because of the lack of preliminary proof which might or might not have been supplied by the party offering such testimony, the objection must be specific and it must point out the alleged defect.

■ With this admonition to members of the bar we shall, however, consider the claims of appellant in the instant case. The records here in question were not rendered inadmissible by failure to preliminarily show that the witness was the actual custodian thereof. Section 1953f of the Code of Civil Procedure specifically provides that such records shall be competent evidence ". . . if the custodian *or other qualified witness* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." (Emphasis added.)

■ The hard and fast rule that the custodian of the records must be produced is specifically dispensed with by the statute. Undoubtedly the Legislature determined that such a rule provoked undue interference with the operation of business enterprises and was unnecessary to insure reliable evidence. ■ In the words of our Supreme Court in *Loper* v. *Morrison*, 23 Cal.2d 600, 608, 609 [145 P.2d 1]: "It is the object of the business records statutes to eliminate the necessity of calling each witness, and to substitute the record of the transaction or event. It is not necessary that the person making the entry have personal knowledge of the transaction. (Citing cases.)" See also *Nichols* v. *McCoy*, 38 Cal.2d 447, 449, 450 [240 P.2d 569].

■ Where, as in the case now before us, the determination of the trial court that the foundation laid was sufficient is a deduction reasonably drawn from the evidence, such conclusion is binding upon an appellate court (*Egan* v. *Bishop*, 8 Cal.App.2d 119, 123 [47 P.2d 500]; *Ducat* v. *Goldner*, 77 Cal.App.2d 332 [175 P.2d 914]). ■ In the case at bar the testimony of the witness that he was an officer of the bank

and had access to the records is quite sufficient to support the ruling of the trial judge. From the testimony given by the assistant cashier of the bank it could well be inferred that the records were prepared in the usual manner and regular course of the bank's business. As was said in *Thompson v. Machado,* 78 Cal.App.2d 870, 873 [178 P.2d 838] : " '. . . In the case of the conduct of the business and affairs of an establishment, it is presumed that the regular course of business of such establishment is followed (Code Civ. Proc., § 1963, subd. 20) and that the books and records of an establishment truly reflect the facts set forth in such books (Code Civ. Proc., § 1953f).' "

 We are further persuaded that no prejudice ensued to appellant from the admission into evidence of the records in question. There was ample independent evidence from which the jury could infer the deposit of this check into Miss Olazebal's account. The deposit slip, showing the deposit of a $760 warrant into this account, was admitted without objection, as was the check itself, which, we must assume, had the usual markings showing deposit.

The only function performed by these bank records was to corroborate the already convincing proof of the deposit in question.

 Appellant's objection to the question propounded to the assistant cashier of the bank as to whether the check was deposited in his bank, on the ground that it called for a conclusion of the witness is unavailing. The propriety of the question comes squarely within the rule announced in *People v. Boggess,* 194 Cal. 212, 228, 229 [228 P. 448], as follows : ". . . It is the generally recognized rule that the opinions of non-expert witnesses are admissible upon a great variety of unscientific questions arising every day and in every judicial inquiry. These opinions are not admitted in evidence as testimony of experts, strictly so called, but rather upon the theory that they depend upon knowledge which anyone may acquire but which the jury may not have and are the most satisfactory and oftentimes the only obtainable evidence of the fact to be proved." Here the bank's assistant cashier was clearly competent to testify from the various markings upon the warrant that it had been deposited at the bank where he was employed.

 Finally, appellant urges that the district attorney was guilty of prejudicial misconduct. In that regard the record reveals that a witness, Walter G. Stennett, testified that

appellant's reputation for honesty and integrity was "very good, indeed, I consider Mr. Fowzer the soul of honesty." The district attorney thereupon questioned the witness as to whether his testimony would be the same, "if you were informed that in 1951 Mr. Fowzer was investigated in regard to certain forgeries in which he and the Probation Department of the County of Los Angeles were concerned?" Appellant contends that allowance of this question over his objection constituted reversible error because the question was not asked in good faith. By reason of the prejudice which might result to an accused such method of examination is always to be viewed with caution where the prosecution is not acting in good faith, but in the cause now engaging our attention the good faith of the district attorney is questioned only in the arguments of counsel on the hearing of the motion for a new trial, and in the absence of any showing in the record, we cannot hold that the question was not within the proper bounds of the prosecution's examination of the witness. ▇ As was said by the Supreme Court in *People* v. *McKenna,* 11 Cal.2d 327, 335, 336 [79 P.2d 1065]; ". . . In the absence of a *showing* of bad faith it is always within the scope of legitimate cross-examination to ask a character witness whether he has heard the person whose reputation is under investigation accused of conduct inconsistent with the character attributed to him by the witness. . . ." (Emphasis added.) See also *People* v. *Logan,* 41 Cal.2d 279, 287 [260 P.2d 20].

▇ It is manifest from appellant's argument on the motion for a new trial that it was his contention that the district attorney was guilty of misconduct because he failed to produce evidence of the investigation referred to in the challenged interrogatory. This contention is without merit because, as was said in *People* v. *Gin Shue,* 58 Cal.App.2d 625, 635 [137 P.2d 742], ". . . The prosecutor is not permitted to show his good faith by offering evidence of the truth of the specific acts of misconduct which are the subject of the question, because that would be to place in issue the truth of that charge, a purely collateral matter. The lack of good faith must be proved in some way other than by the failure of the prosecution to substantiate the collateral charge. . . ."

While in the instant case appellant has not sustained the burden cast upon him of showing bad faith, we are not to be understood as holding that the district attorney was entitled to ask the reputation witness ". . . would your testimony in regard to Mr. Fowzer's reputation *be changed* if you were informed that in 1951 Mr. Fowzer was investigated in regard

to certain forgeries . . ." (Emphasis added.) ▮ When, as in the case at bar, a witness has testified to the general reputation of an accused, the credibility of such character witness is placed in issue, and one way of testing the accuracy and weight of the statement of such witness that the reputation of the defendant is good is to inquire of the witness whether he had heard of certain rumors, occurrences or charges as to specific acts of misconduct on the part of the accused relating in general to the traits involved in the charges pending against the latter. ▮ When an answer thereto is given by the witness the prosecution is confined to that answer and can inquire no further into the matter. The asserted general misconduct of the defendant cannot be inquired into by either the prosecution or defense as a fact. The inquiry is limited to the good reputation of the person on trial and as to the credibility of the witness who testifies that that reputation is good (Wigmore on Evidence, 3d ed., §§ 197, 988; *People* v. *McKenna, supra; People* v. *Stevens*, 5 Cal.2d 92 [53 P.2d 133] ; *People* v. *Tedesco*, 1 Cal.2d 211 [34 P.2d 467] ; *People* v. *Hernandez*, 47 Cal.App.2d 132 [117 P.2d 394] ; *People* v. *Sambrano*, 33 Cal.App.2d 200 [91 P.2d 221]). If requested so to do, the trial judge should admonish the jury that the prosecution's questions do not prove the existence of the fact of the misconduct, and that the existence of such fact is not an issue in the case—that it is relevant only on the issue as to the credibility of the character witness if the latter admits knowledge of the misconduct. In the case at bar no such instruction was requested.

▮ However, since there is no showing of bad faith on the part of the prosecutor we are persuaded that no error prejudicial to appellant has been shown by permitting the aforesaid question to be asked. Before this court can reverse a judgment for the improper admission or rejection of evidence, an examination of the entire cause must show that the error complained of resulted in a miscarriage of justice (Cal. Const., art. VI, § 4½; Code Civ. Proc., § 475). The evidence in this case was overwhelming as to and demonstrative of the guilt of appellant. The handwriting expert testified that appellant had forged the addressee's signature upon the registered letter receipt as well as upon the warrant itself, and that he had written part of the deposit slip with which the warrant was deposited. It was established that the warrant here in question was deposited into the account of appellant's present wife. The Department of Charities' file

containing information upon the case which gave rise to this prosecution was surreptitiously removed from the Charities Department and later found in the apartment of a close friend of appellant, at which place the latter had formerly resided.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.