[Crim. No. 5605. In Bank. Oct. 15, 1954.]

THE PEOPLE, Respondent, v. WILLIAM D. HEDDERLY,
Appellant.

Bernard C. Brennan, William E. Cornell and Harold Judson for Appellant.

Edmund G. Brown, Attorney General, and Alan R. Woodward, Deputy Attorney General, for Respondent.

EDMONDS, J.—William D. Hedderly was found guilty on all counts of an indictment which charged that, on ten different occasions, "in Violation of Section 487, subdivision 1, of the Penal Code . . . [he] did willfully, unlawfully and

feloniously take . . . [specific sums of money], the personal property of Pacific Mutual Life Insurance Company, a corporation." He now challenges an order which suspends the imposition of sentence and admits him to probation, a final judgment for the purpose of an appeal (Pen. Code, § 1237), and an order denying his motion for a new trial.

Hedderly, a licensed insurance agent, was a copartner in Group Consultants of California, which specialized in selling and administering group insurance. Under one plan for such insurance, a master policy is issued to a trustee appointed to act on behalf of the members of an organization. The premium is computed according to the number of members and their classifications. A trust indenture authorizes the trustee to collect a specific amount from each insured person and to pay the total of such premiums to the insurer.

The present prosecution arises out of Hedderly's administration of two policies written by Pacific Mutual for the Associated Plumbing Contractors of California and the Western States Meat Packers Insurance Fund. The policy for the plumbing contractors originally had been administered by one Sullivan, but Hedderly was substituted for him and thereafter collected the required amounts. However, the record does not clearly show whether Hedderly acted as trustee or as agent for Sullivan.

Both this policy and the one held by the meat packers were handled by Hedderly under a written agreement with Pacific Mutual to pay, in addition to his sales commission, an administration fee. The amount of this fee was based upon a percentage of the premiums collected plus an amount equal to one-half of the cost of certain office expenses. Whether similar arrangements were made with regard to the administration by Group Consultants of other policies written by Pacific Mutual is in dispute.

The premiums for the two policies administered by Hedderly were collected by him and deposited in a single unsegregated trustee's account, from which only he was authorized to draw. Each month he would prepare a statement summarizing the number and classifications of members, and send it to Pacific Mutual with the amount shown to be due the insurer.

During 1951, Hedderly withdrew from the bank account more than $39,000, which was not paid over to Pacific Mutual. About $17,000 was deposited in other trustee accounts, and the indictment makes no charge with regard to that amount. Ten other withdrawals were made, totaling $22,400, eight

of them being deposited in Hedderly's personal business account. One was used to purchase a membership in a country club, and on another he obtained cash. These withdrawals were not authorized by Pacific Mutual, nor did the trustees have knowledge of, or consent to, them.

Confronted with inquiries concerning his accounts, Hedderly admitted the shortages. He obtained the money, he explained, by falsifying his summaries to Pacific Mutual so as to indicate a lesser number of members than actually were insured. Asked why he had taken the money, Hedderly told a representative of Pacific Mutual: "I gambled and I lost. . . . I had expected to write business that was being held up by the . . . [Wage Stabilization Board] . . . and it wasn't written because the W.S.B. held it up." A similar statement was made to his partner, whom he told that he had planned to hide the shortage by destroying his records and instituting a new system of bookkeeping, which would make it unnecessary to replace the money.

Hedderly testified at his trial and did not deny that he had made the withdrawals. His theories of defense were that he was entitled to the money, or that he took it under such a claim of right as would negate a fraudulent or felonious intent. One claim in this regard was that, as agent for the trustees, he was authorized to withdraw the money and to apply it to his own use. He also sought to show that the trustee account included a "breakage fund," which resulted from a difference in the methods used by the trustees and the insurance company to compute premiums, and to which the administrator was entitled as a matter of right. Another theory was that the insurer owed to him substantial amounts for commissions and administration fees, which he had retrieved from the trustee account. Substantial evidence to refute each of these contentions was produced by the People.

No challenge now is made as to the sufficiency of the evidence to support the conviction. But Hedderly renews the argument presented to the trial court in support of motions to dismiss the indictment, for an acquittal, and for a new trial upon the ground that a material variance exists between the indictment and the proof. He also contends that the exclusion of certain evidence was prejudicially erroneous.

Hedderly's claim of a material variance stems from an asserted discrepancy between the allegation of the indictment that he unlawfully took money belonging to Pacific Mutual and the proof. He presents the record as clearly establishing

that the money belonged to the trustees for whom he acted as agent. The only tenable theory for finding him guilty of theft, he argues, is that of embezzlement which requires a showing that he fraudulently appropriated property entrusted to him. (*Cf*. Pen. Code, § 503.) There is no evidentiary support, he asserts, for a finding either that the money belonged to Pacific Mutual or that it entrusted the money to him.

 The testimony with regard to Hedderly's status as considered by the parties to the transaction and their understanding of the nature of the insurer's claim to the money, although conflicting, substantially supports a determination adverse to Hedderly's contention. ██ Furthermore, the trial court was justified in concluding that he occupied the position of a collector of premiums for Pacific Mutual, in which capacity by statute he was under a fiduciary duty to deliver them to the company, a breach of which duty is punishable as embezzlement. (Pen. Code, §§ 506, 506a; Ins. Code, § 1730 [formerly Pen. Code, § 506b]; *cf. Maloney* v. *Rhode Island Ins. Co.*, 115 Cal.App.2d 238, 244-247 [251 P.2d 1027].) █ And the insurer's right to have the premiums applied to satisfy its claims under the policy is a sufficient legal interest in them to support the conclusion that Hedderly's fraudulent appropriation of the money constituted embezzlement. (*Cf. People* v. *Applegate*, 91 Cal. App.2d 163, 171-173 [204 P.2d 689].) ██ Finally, even if it were concluded that there was no defrauding of Pacific Mutual but only of the trustees, such a variance would be only in the designation of the person injured and could not be deemed material. (Pen. Code, § 956; *People* v. *Foster*, 198 Cal. 122-123 [243 P. 667].)

██ Two rulings upon the admission of evidence are challenged. One of them was the exclusion of oral and documentary testimony offered to show that Pacific Mutual had held out to various associations inducements to accept insurance plans administered by Hedderly because of his competency. Hedderly sought to show by this evidence that it was the practice of Pacific Mutual to deal with him as agent for such associations and to negate the claim that he was agent for Pacific Mutual. Such evidence, if at all relevant, could have had only slight bearing upon the question of agency. In any event, his fiduciary duty to the insurer was established by statute, and the offered evidence thus was immaterial.

Also challenged is the exclusion of evidence concerning arrangements for commissions and the payment of adminis-

tration fees for policies other than the two administered solely by Hedderly. This testimony was offered to show that, in applying the trustee funds to his own use, Hedderly was not attempting to defraud the insurer, but was appropriating them under a claim of right.

The basis of the trial court's ruling was that the evidence excluded was merely cumulative of a great amount of similar testimony. Also, as stated in the oral opinion of the trial judge, this was inconsistent with Hedderly's main contention, that the funds were the property of the trustees and not of the insurer. In any event, in view of the manner in which the money was appropriated and Hedderly's many admissions that his taking of it was improper, any error in the exclusion of such evidence could not have been prejudicial.

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred. Schauer, J., concurred in the judgment.