[Crim. No. 7183.    Second Dist., Div. Three.    Dec. 30, 1960.]

THE PEOPLE, Respondent, v. MERTON L. BYRD, Appellant.

Simmons & Simmons and Herbert W. Simmons, Jr., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was accused in count I of forging the name W. E. Savage on the endorsement of a check, in count II of forging the name Flemon Johnson on the endorsement of a check, and in count III of grand theft in unlawfully taking $200 from George S. Miller on or about August 1, 1959.

On the day of trial the district attorney filed an amended information. The only amendment was to count III. Instead of merely alleging that defendant unlawfully took $200 from George S. Miller on or about August 1, 1959, it alleged additionally, ''and within a twelve consecutive month period prior thereto, and while said defendant was an employee of George S. Miller.''

It is asserted the court erred in permitting the amended information to be filed in that it was not timely and that it did not conform to the evidence taken at the preliminary hearing. The court may permit an amendment of an information at any stage of the proceeding, and the trial shall continue as if the pleading had been originally filed as amended unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement may be granted. (Pen. Code, § 1009.) Whether the prosecution will be permitted to amend an information is a matter within the sound discretion of the trial court and its determination will not be overturned on review in the absence of a clear abuse thereof. (*People v. Stoddard*, 85 Cal.App..2d 130, 138 [192 P.2d 472].) We find nothing in the record to show that the substantial rights of defendant were in any way prejudiced by the amendment. There was no abuse of discretion.

The claim that the amendment did not conform to the evidence taken at the preliminary may not be considered. The transcript of the evidence taken in that proceeding is not before us. In the absence of the evidence taken at the

preliminary, this court must indulge all presumptions in favor of the judgment, and assume the amendment did not change the offense to one not shown in the evidence taken at the preliminary hearing. (*People* v. *Walker,* 170 Cal.App.2d 159, 163 [338 P.2d 536].)

█ Defendant says he was denied a continuance. The record does not support him. He did not request one. On the contrary, he told the court, "At this time, your Honor, we waive time and are ready to proceed to trial."

Pacific Coast Wrecking Company, a licensed demolition company, was owned by George S. Miller. Pacific Coast Wrecking Company and City Wrecking & House Moving Company became a joint venture. Later the two companies became Pacific Coast Wrecking Company. In March 1959 an account was opened in the name of City Wrecking with Security-First National Bank. Later the account was changed to Pacific Coast. At all times George S. Miller was the only person authorized to sign checks on the account.

The company collected salvageable materials from various jobs and sold them. In April 1959 it had 17 jobs. Defendant was an employee of Pacific Coast. He began work about December 5, 1958, and remained until the latter part of August 1959. He was a bookkeeper, answered the telephone, and made out checks for payroll and expenses. He had no authority to sign George S. Miller's name to checks. Each week the timekeepers on the jobs called in the time of employees to defendant or to Lillian Holliman. Defendant and Miss Holliman made up the payroll and George S. Miller signed the payroll checks on a Thursday or Friday. He customarily signed all the checks at one time. He did not examine the names on the checks since there were 80 or 90 employees at times. Defendant had $400 in a petty cash box. It was kept to give advances on wages and for "dumping money." An employee who had received an advance came into the office to cash his check. He would receive the balance after the advance was deducted.

When materials were sold the job foreman, who had authority to sell, would issue an invoice and turn it and the cash or check from the sale in to defendant. Defendant entered the transaction in his salvage book. He had no authority to endorse and deposit checks in his own account when they were payable to another person, or to cash them, or to make out checks to nonexistent persons. He was instructed to immediately turn in money he received. On several occasions Mr. Miller found

money apart from petty cash on defendant's desk which defendant had not turned over to him.

A Marvin Cochran was not employed by Pacific Coast at any time. Miss Holliman showed Mr. Miller a check for $106.37 payable to Marvin Cochran drawn on Pacific's account in Security-First National Bank. The check was purportedly endorsed by Marvin Cochran and was endorsed by defendant. Mr. Miller had a meeting with his foremen and talked to defendant on August 28, 1959. Mr. Miller said: "Byrd, who is this fellow that you got here, Marvin Cochran? We have nobody working by that name. We have all the foremen in." Defendant replied, "Go to hell, I am not coming back." Miller stopped payment on the check. After the Cochran incident, he had the books audited.

W. E. Savage testified he was employed by Pacific Coast in 1959; a check shown to him drawn on the account of Pacific Coast at Security-First National Bank dated April 15, 1959 for $90 payable to W. E. Savage was endorsed with his name followed by defendant's name; his name on the endorsement was not written by him; he never gave anyone permission to sign his name on the back of the check. (Count I.)

Flemon Johnson testified he was employed by Pacific Coast in April 1959; a check shown to him drawn on the account of Pacific Coast at Security-First National Bank dated April 22, 1959 for $69.74 payable to Flemon Johnson was endorsed with his name followed by defendant's name; his name on the endorsement was not written by him; he never gave anyone permission to sign his name on the back of the check. (Count II.)

There was evidence that other checks bore endorsements of employees who had not written the endorsements. These checks were endorsed by defendant below the purported endorsement of the employee. There was also evidence that a number of checks had been issued to nonexistent persons. These checks were endorsed by defendant below the purported endorsement of the employee.

From December 1958 through August 7, 1959, defendant deposited $2,111.64 in a personal account in Citizens National Bank, of which $776 was cash. Of the difference which was deposited by check, $??1.39 was in payroll checks issued to defendant. There were no withdrawals. From December 1958 through August 1959 defendant deposited $3,830.09 in a personal account in Security-First National Bank, of which $802

was cash. Of the $3,028.09 deposited by check, $2,560.40 was in payroll checks.

When defendant entered the employ of Pacific Coast he was paid $100 a week. Later he was paid $125 a week until his employment terminated. In the course of his employment he received one bonus of $200. He was paid a total of $4,093.26 during his employment.

When defendant first started to work for Pacific Coast he wore blue denims and a coat. Shortly, he wore new clothes practically every day. On January 2, 1959, he bought an Oldsmobile with monthly payments of $80.25. In April 1959, he bought $1,211.55 worth of furniture and made a down payment of $400. For eight years his monthly rental was $75. In April 1959 he moved and paid $105 rent for four months.

On his arrest defendant told the arresting officer he had signed the endorsement ''W. E. Savage'' on the check payable to Savage, and he had endorsed the name of the payee on four other checks, and that he had cashed the five checks and had turned the money over to George S. Miller.

Defendant contends the evidence is insufficient to sustain the finding of guilt in that there was no evidence the funds appropriated belonged to George S. Miller. The point is without merit. The argument is that the evidence shows Ruth Miller, wife of George S. Miller, and not the latter, was the owner of Pacific Coast. Assuming such to be the fact, the matter is of no consequence. (*People* v. *Coe*, 171 Cal.App.2d 786, 795-796 [342 P.2d 43].) As said in *People* v. *Torp*, 40 Cal.App.2d 187 [104 P.2d 542] (p. 192):

''Whether the legal title to the money was in the Austins, the Gaines or Mrs. Costa, is immaterial in this criminal proceeding. As far as the defendant is concerned he had no legal title to the money and his possession was for a limited purpose only. He cannot, in defense of his act, raise the question of title as between others.''

If it were concluded that the money appropriated was that of Ruth Miller and not that of George S. Miller, as alleged in the information, the variance was only in the designation of the person injured and cannot be deemed material. (*People* v. *Hedderly*, 43 Cal.2d 476, 480 [274 P.2d 857].)

It is asserted the court erred in not permitting the introduction in evidence of 31 checks bearing second and third-party endorsements. No reason is assigned or authority cited in support of the point. It may not be considered.

▆ John Grimes was superintendent of all jobs of Pacific Coast. He was in charge of the foremen. He kept the time of the men on the jobs in time books. Foremen on the jobs also kept time books. They turned these over to Mr. Grimes. All employees were listed in the time books. The time books were kept in the regular course of business. The entries were made at or about the time the work was done. After these facts were proved, Mr. Grimes was asked whether a time book showed the employees who were on a certain job. Over defendant's objection he was permitted to answer that it did. The time book was then admitted in evidence over defendant's objection. Defendant claims error. He asserts an insufficient foundation was laid for the testimony and for the book. There was no error.

A record of an act, condition or event, if relevant, is competent evidence if a qualified witness testifies to its identity and the mode of preparation, if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court the sources of information, method and time of preparation were such as to justify its admission. (Code Civ. Proc., § 1953f.) The testimony of Mr. Grimes and the time book were offered for the purpose of proving that Marvin Cochran was not employed by Pacific Coast at the time the check was issued to him. Section 1953f was complied with and the rulings were proper. (*People* v. *Fowzer*, 127 Cal.App.2d 742, 747-748 [274 P.2d 471].)

▆ Over defendant's objection the court admitted in evidence 13 checks purportedly payable to nonexistent persons. Defendant asserts error. He says there was not sufficient foundation laid in that there was no showing the payees were nonexistent. There was no error. These checks were all endorsed by defendant and cashed or deposited in bank by him. A police officer testified he had attempted to locate the purported payees of these checks and had been unable to do so. The sufficiency of the search to warrant admission of the checks in evidence was a question for the trial court.

There were no other assignments of error.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.