[Civ. No. 30427. Second Dist., Div. One. Feb. 27, 1968.]

JAMES O. REIMEL, as Director, etc., Plaintiff and Appellant, v. LEVERETTE D. HOUSE, as Chairman, etc., et al., Defendants and Respondents; WESTSIDE LIQUOR COMPANY, INC., Real Party in Interest and Respondent.

512

Thomas C. Lynch, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Plaintiff and Appellant.

Charles P. Just and Leo K. Gallant for Defendants and Respondents.

Harold Easton and Alan F. Kane for Real Party in Interest and Respondent.

FOURT, J.—This is an appeal by the Department of Alcoholic Beverage Control of the State of California (hereinafter sometimes referred to as the Department) through its director, James O. Reimel, from a judgment of the trial court denying a petition for a writ of mandate (and discharging an alternative writ of mandate), which would have required the Alcoholic Beverage Control Appeals Board (hereinafter sometimes referred to as the Board), to affirm the decision made by the Department.

Westside Liquor Company (hereinafter sometimes referred to as Westside), doing business as Hazan's Wines and Spirits, holds an off-sale general liquor license issued by the Department. On December 13, 1963, the Department filed an accusation against Westside in which it was alleged in separate counts that on each of three occasions (November 15, 18, and 22, 1963, respectively) Westside violated the Fair Trade Laws (Bus. & Prof. Code, § 24755) by making retail sales of alcoholic beverages at prices below the effective minimum retail prices. A hearing on these charges was conducted before a hearing officer from the Office of Administrative Procedure, who issued a proposed decision finding the accusations true. He recommended license revocation upon conditions permitting Westside to transfer the license to a third party, subject to 60 days suspension. The Department adopted the findings of the hearing officer, but modified the penalty and issued its

decision revoking Westside's license on each count severally and separately.

Westside appealed to the Board, which rejected the grounds proposed by Westside for reversal of the Department's decision, but on its own motion undertook to consider the issue, not theretofore raised of whether the minimum retail prices which the Department sought to enforce had been published in accordance with the publication provisions of Business and Professions Code, section 24755 subdivision (b). On this issue, the Board determined the case adversely to the Department, holding that the record did not contain substantial evidence of the publication of these specific minimum prices in compliance with the controlling statute. The Board founded its decision on a determination that the Department's rule (99 (k), Cal.Admin. Code, tit. 4), conflicted with the provisions of the statute insofar as it permitted publication of minimum prices in a trade journal in general circulation among liquor licensees in the trading area affected to satisfy the publication requirement, and was therefore invalid.

Following the Board's decision, the Department filed the instant petition for writ of mandate in the superior court; the Board answered and Westside intervened. The court affirmed the Board's action, and the Department appeals the court's denial of the requested writ.

A résumé of some of the facts, as disclosed by the record, shows that sales in violation of the statute were made by a long-time employee of Westside, Claire Feldman. She was familiar with Patterson's (a trade journal) and she made written comparison for the Department investigators, who posed as ''special customers'' from whom volume purchases might be anticipated, of the published minimum retail prices and the discount prices at which Westside would voluntarily sell the same brand name merchandise. The first Department investigator to visit the Westside store was Daniel H. Latendresse who, on November 14, 1963, represented to Claire that he was employed by a public relations firm, identified as Ben A. Cossart and Associates. She quoted him on his first visit a discount price for Jack Daniels liquor, but he made no purchase. The next day he returned to the store, reminded Claire of their previous conversation, and purchased several bottles of Jack Daniels at a price per bottle below the scheduled minimum retail price for that brand. On November 18, 1963, Department investigator George H. Weiner, representing that he was employed by the same public relations firm, completed a second purchase of brand name liquor from Claire at a price

per bottle in each instance lower than the scheduled minimum retail price. Finally, on November 22, 1963, a third Department investigator, Robert LaTouche, visited the Westside store in the company of Latendresse. Claire then offered to place their names on cards in the store's "special customer" file which would reflect the prices she quoted to them, so that in her absence other clerks would acknowledge the deal she had made with these customers. Thereafter, upon request, she went through the whole store with the investigators, quoting various prices for which she would sell them brand name merchandise below minimum retail prices. Finally, she prepared a written list for them which indicated in the left hand column the prices published by Patterson's and in the right hand column the lower prices at which she would sell them the same brands of liquor. On that date LaTouche made the third purchase of brand labelled merchandise below the filed minimum retail price, as alleged in the accusation.

Appellant asserts that the Board exceeded its jurisdiction in deciding the case upon an issue not raised at the hearing before the Department; that rule 99(k) of the Department is a valid regulation and not in conflict with the controlling statute which it purports to implement; and that substantial evidence supports the Department's decision. These are meritorious contentions.

Neither at the hearing before the Office of Administrative Procedure hearing officer, nor in its appeal to the Board did Westside raise the issue of the validity of rule 99(k), and at no time did it assert that this regulation exceeded the Department's authority or conflicted with the controlling statute (Bus. & Prof. Code, § 24755, subd. (b)). In fact, both the Department and the licensee assumed that the publication requirements of the statute had been complied with to establish effective minimum retail prices for the alcoholic beverage brands in question, and to afford legitimate price protection for the owners of such brand names. Since the issue of whether the publication was proper was not raised at the hearing before the Department, this issue was not properly before the Board. (*Harris* v. *Alcoholic Beverage etc. Appeals Board,* 197 Cal.App.2d 182 [17 Cal.Rptr. 167]; *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control Appeals Board,* 65 Cal.2d 349, 376 [55 Cal.Rptr. 23, 420 P.2d 735].)

The Department, moreover, in passing rule 99(k) was well within its jurisdiction and was, in fact, fulfilling its

constitutional obligation. " '. . . "It has long been uniformly held that there is no inherent right in a citizen to engage in the business of selling alcoholic beverages (citations). . . . The governing authority may, therefore, in the exercise of the police power for the protection of the public morals, health and safety, grant the privilege of selling alcoholic beverages upon such terms and conditions as it may determine. (Citations.)" ' " (*Schaub's Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 858, 869-870 [315 P.2d 459].) Under these circumstances, it is clearly established that the ". . . administrative interpretation of a statute made by an administrative agency charged with carrying out a particular statute will be accorded great respect by the courts and will be followed if not clearly erroneous." (*Cohon* v. *Department of Alcoholic Beverage Control,* 218 Cal.App.2d 332, 339 [32 Cal.Rptr. 723]; see also *Rich* v. *State Board of Optometry,* 235 Cal.App.2d 591, 604 [45 Cal. Rptr. 512].) The statute in the instant case provides, in part, that any person filing a minimum retail price schedule shall ". . . cause such schedule to be published in a manner which will result in each retailer affected by such schedule being advised of the contents of such schedule prior to the effective date thereof." (Bus. & Prof. Code, § 24755, subd. (b).) Rule 99(k) as promulgated by the Department provides that "The person filing minimum retail price schedules shall cause prices for all items on every original price schedule and for every change of price or new price on every replacement price schedule to be published in a trade journal of general circulation in the trading areas affected on or before the effective date thereof." (Cal. Admin. Code, tit. 4, § 99(k).) It is difficult to see what manner of publication, short of personal service upon or mail directed to each licensee, would be more effective to advise each retailer of the contents of minimum price schedules than the publishing of such schedules in a journal circulated among those persons holding off-sale liquor licenses in the affected trading area.

Subsequent to the date upon which the briefs pertaining to this appeal were filed, it has been held that rule 99(k) is a valid regulation. (*Reimel* v. *Alcoholic Beverage etc. Appeals Board,* 256 Cal.App.2d 158 [64 Cal.Rptr. 26]; pet. for hearing denied 1/17/68.) Based upon the reasons set forth in that opinion "We conclude that the Department's interpretation of the publication provisions of section 24755 is reasonable and certainly not 'clearly erroneous.' It should be followed

by us. [Citation.]'' (*Rcimcl* v. *Alcoholic Beverage etc. Appcals Board, supra*, p. 171.

■ The question presented for review thus ultimately resolves itself into whether the Department's findings were supported by substantial evidence in the whole record. (*Harris* v. *Alcoholic Beverage Control Appeals Board*, 212 Cal. App.2d 106, 112-113 [28 Cal.Rptr. 74]; *Cohon* v. *Department of Alcoholic Beverage Control*, 218 Cal.App.2d 332, 337 [32 Cal.Rptr. 723].) Our review of the record discloses ample evidence to prove that the alleged sales of liquor were made at the Westside store at the prices specified and upon the dates mentioned in the accusation. In each instance, the owner of the brand name of the beverage sold by Claire Feldman had caused a ''distilled spirits minimum retail price schedule'' to be filed with the Department. Moreover, the parties stipulated at the original hearing that these prices were published in the November 1963 issue of the Patterson California Beverage Gazetteer, a monthly trade journal of general circulation among licensees in the trading area affected (southern California); they further stipulated that Westside was a subscriber to that trade journal at the time of the charged violations.[1] In this manner the requirements of rule 99(k) were fulfilled, and it is clear that the licensee committed the violation charged of selling alcoholic beverages at prices below the effective *filed minimum* prices pertaining to the specific brand names. Therefore, substantial evidence supports the Department's findings that the violations occurred as charged in its accusation.

The judgment of the trial court is reversed with directions to the superior court to grant a writ of mandate commanding the Board to set aside its decision reversing the decision of the Department and to affirm such decision of the Department.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 26, 1968, and the petition of the real party in interest and respondent for a hearing by the Supreme Court was denied April 24, 1968.

---

[1] ''MR. STEVENSON: Second, Your Honor, the Department will offer a stipulation; that the Patterson California Beverage Gazetteer is a trade publication within the southern trading area in the State of California, within the liquor industry; that it was published in the month of November, 1963, and that all alcoholic beverages alleged in the Accusation and the minimum retail prices of each, were published in the November

1963 issue; and further, that the respondent corporation was a subscriber to the Patterson Gazetteer.

"HEARING OFFICER: Pursuant to stipulation——

"MR. SNYDER: So stipulated. No objection."