[Civ. Nos. 26543, 26544. First Dist., Div. One. June 23, 1970.]

EDWARD J. KIRBY, as Director, etc.,
Plaintiff and Respondent, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Defendant and Respondent;
MARINO DEL CARLO, Defendant and Appellant.

(Consolidated Appeals.)

**COUNSEL**

Dooling, Kelly & Moiseeff and Joseph I. Kelly for Defendant and Appellant.

No appearance for Defendant and Respondent.

Thomas C. Lynch, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—In each of these consolidated actions the licensee has appealed from a judgment of the superior court[1] granting the Director of the Department of Alcoholic Beverage Control a peremptory writ of mandate commanding the Alcoholic Beverage Control Appeals Board to set aside a decision and order which had reversed a decision of the Department suspending the licensee's license for sales of liquor at less than the effective minimum price. (Bus. & Prof. Code, § 24755.) In each case the Appeals Board had determined that the evidence did not support the findings of the Department with respect to whether or not there was a publication mailed to all, or substantially all, of the licensees affected by the minimum price schedule which the licensee admittedly violated.[2]

The licensee's sole contention[3] on appeal is that the court below erred because the Department's finding of publication in compliance with the statute is based solely on hearsay and therefore the finding is not supported by substantial evidence and was properly set aside by the Appeals Board.

---

[1]Section 23091 of the Business and Professions Code formerly provided for review of the decisions of the Alcoholic Beverage Control Appeals Board by petition for writ of mandate to the superior court. Since November 8, 1967 (Stats. 1967, ch. 1525, p. 3634) review of decisions of the Appeals Board is by petition for writ of review to an appellate court. (See Bus. & Prof. Code, §§ 23090 and 23090.5; and *Department of Alcoholic Beverage Control* v. *Superior Court* (1968) 268 Cal.App.2d 67 [73 Cal.Rptr. 780].)

[2]At the time of the alleged price violations section 24755, subdivision (b), provided in part: "Any person filing such schedule shall cause such schedule to be published in a manner which will result in each retailer affected by such schedule being advised of the contents of such schedule prior to the effective date thereof." This provision was deleted by Statutes 1967, chapter 1450, page 3384.

Department rule 99(k) (Cal. Admin. Code, tit. 4, § 99(k)) provided that publication could be in a trade journal of general circulation in the trading area affected. Rule 99(k) was repealed by the Department in 1967 (Register 67, No. 41) after the repeal of the publication requirements of section 24755, subdivision (b).

[3]In each action the trial court, in addition to commanding the Appeals Board to set aside and vacate its decision and order, commanded it "thereupon to make its determination as to the issue raised with respect to the application of Business and Professions Code section 24755.1, to enter its decision setting forth such determination and to affirm the decision of the department in all other respects." It is established that the provisions of section 24755.1 do not apply retroactively to violations which preceded the adoption of the section. (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 374 [55 Cal.Rptr. 23, 420 P.2d 735]; *Liquor Sellers, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 3 Cal.App.3d 536, 540-541 [83 Cal.Rptr. 567] (hearing in S.Ct. denied); *Reimel* v. *Alcoholic Bev. etc. Appeals Bd.* (1967) 256 Cal.App.2d 158, 175-176 [64 Cal.Rptr. 26].) The question of whether the abolishment of suspensions should be given only prospective application was raised at the hearing on the first accusation. In view of the reversal by the Appeals Board on the ground of insufficient proof of mailing of the publication, the issue was not presented to the trial court or to this court.

The record reveals that the licensee stipulated to facts which satisfy the legal requirements of publication as interpreted by the courts; that the controversial testimony is not necessarily hearsay on the material issue involved; that the licensee failed to properly raise the issue before the Department; and that the licensee failed to meet the burden of proof which shifted to him because of the presumption of regularity which arose from the Department's certification of the price schedules. Accordingly the judgments must be affirmed.

*Prior Proceedings*

Action 1 Civil 26544 involves sales which occurred on March 25, 1965 and April 29, 1965. An accusation charging these two offenses, and an additional offense which was dismissed, was filed September 8, 1965. After a hearing, the Department adopted the proposed decision of the hearing officer on February 17, 1966, and ordered the licensee's license suspended for 15 days on each of two counts severally, separately, and consecutively, for a total of 30 days.

Meanwhile sales on September 18, 1965 and October 16, 1965 resulted in the proceedings which are the subject of action 1 Civil 26543. An accusation was filed on October 27, 1965, and after hearing and the submission of a proposed decision, the Department on February 17, 1966 adopted the decision and suspended the license for 15 days on each count, severally, separately and consecutively for a total for 30 days, and ordered that this suspension follow the suspension imposed in the prior case.

Thereafter the two matters followed parallel courses, through the Appeals Board and superior court, to this court.

*The Evidence*

The licensee admits that the evidence in each case is sufficient to support the findings that sales did occur at the prices indicated in the findings, and that the sales price was less than the price set forth in the price schedule filed with the Department by each of the respective brand owners.

At the hearing on the first accusation, photostatic copies of pages of the Beverage Industry News, a monthly publication, for the months of March and April 1965, which set forth the prices for the beverages in question as found in the schedules filed with the Department, were introduced in evidence without objection. Counsel stipulated as follows: "Mr. Leroy Page is the publisher and/or editor of the Beverage Industry News Price Book, that the Price Book is a publication and trade journal published monthly, and that it contains the wine prices and Fair Trade prices and discounts, if any, and distilled spirits minimum retail prices and discounts, if any,

and the malt beverage minimum retail prices and discounts, if any . . . applicable in the Northern California Trading Area, including the counts as set forth in Rule 99, Title IV, Chapter I of the California Administrative Code; that the publication has been in general circulation in the area since 1946; and that since July 1946, copies of the said publication have been mailed to a majority of the off-sale retail licensees of the Department of Alcoholic Beverage Control."

The licensee's attorney commented, ". . . this is not a publication within the meaning of the statute because it is done not by an official agency of the State."

Subsequently, as a result of a discussion between the hearing officer and counsel for the Department,[4] the Department requested and was granted a continuance to secure Mr. Page as a witness. When called as witness Mr. Page testified as follows: that he published the Beverage Industry News; that his publication is a trade paper in the alcoholic beverage industry in California in the northern California trading area; that the publication includes a price book which is published on the first of each month and which contains the prices of distilled spirits sold on that market and gives the wholesale and retail prices as posted with the state as the same are set forth in minimum price schedules received from the brand owner and from the Department; and that the prices are published prior to the effective date and a list of changes is printed in the front of each issue of the price book, including when the information is available, changes which will only become effective in the future.

Mr. Page further testified that the publication was sent to every distilled spirits licensee in the northern California trading area; that the licensee was not a subscriber who paid for the publication, but, nevertheless, as a licensee regularly had been mailed copies of the publication since 1961.[5]

---

[4]This discussion is reported as follows: "THE HEARING OFFICER: . . . Another thing that bothers me is the matter of circulation of the Beverage Industry News. Now, Mr. —— what is his name now? [Counsel for the Department]: Page. THE HEARING OFFICER: Well, Mr. Page is not here, but we have a stipulation that includes, in part, that copies are mailed to the majority of the licensees; which means one more than half. Now, is that general circulation? You might cover that in your brief as well. . . . [Counsel for the Department]: I really hate to submit the case without Mr. Page's testimony because I know his testimony now would be that he mails this journal to each and every off-sale licensee. So for that purpose I would request that the matter be continued over to a date to be determined by the Hearing Officer to have Mr. Page here to testify in person. . . ."

[5]The record states: "Q. Are you familiar with the subscriber list kept by Beverage Industry News, Mr. Page? A. Yes, I am familiar with it. I don't do the actual work in keeping them up. Q. Do you know of your own knowledge whether Marino Del Carlo, doing business at 5122 Third Street, San Francisco, California, is a subscriber to Beverage Industry News? A. Yes, I checked the files when we received the subpena,

On cross-examination of the witness the licensee brought out that the state did not pay for the publication, that it was not licensed by the state in any way nor controlled in any way by a state agency; that it was not filed with any state agency; and that the publisher did not know of any requirement which made it necessary that he receive copies of the schedules from the Department. The witness testified that all brand owners subscribe to the publication.

In argument the licensee's attorney advanced the following contention: "We just want to raise the issue that the publication is not a publication by the State within the purview of the Alcoholic Beverage Control Act in that, since it is a private publication, it is an unlawful delegation of powers or duties to a private individual."

At the hearing on the second accusation, Mr. Page testified that he was the publisher of Beverage Industry News. He identified the price books published for September and October 1965, and stated that his business records showed that the licensee was an addressee of the publication in those months. It was stipulated that the testimony of Mr. Page as set forth in the reported questions and answers in the prior proceedings would be incorporated in the record of the hearing on the second accusation.

*Record Supporting the Department*

In *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1969) 71 Cal.2d 1200 [81 Cal.Rptr. 241, 459 P.2d 657], the court approved the decision of this court in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd.* (1967) 256 Cal.App.2d 158 [64 Cal.Rptr. 26], and held that the publication of the minimum retail price schedule in a trade journal of general circulation in the licensee's trade area, pursuant to the former provisions of California Administrative Code, title 4, rule 99(k), satisfies the publication requirements of section 24755, and that rule 99 and section 24755

---

and he is not a subscriber but he receives the paper. Q. When you say he is not a subscriber but yet he receives the paper, would you explain that, please? A. Yes. When—well, to start with, a person coming into the business in the first place, getting a new license, we send them the publication so that they will be acquainted with it, and we attempt to get them as subscribers. By that I mean, that they will pay for it. And we send them a memorandum invoice, and hope that they will pay. But in many cases they don't. And in this case he's not what we call a paid subscriber, but he received it just the same. Q. All right. So actually, there are two categories of persons who receive the publication: paid subscribers and non-paying subscribers, is that correct? A. That is right. Q. And did I understand your testimony correctly when you say that each distilled spirits retailer in the Northern California Trading Area is mailed a copy of the publication? A. Yes. Q. And are they mailed to the distilled spirits retailers monthly? A. Yes. Q. Now, how long has—to your knowledge has Mr. Del Carlo been a recipient of the publication? A. Well, according to the last card; and I believe that this is the second card they have had in the file since April '61."

are constitutionally valid. (71 Cal.2d at pp. 1201-1202. See also, 256 Cal.App.2d at pp. 165-171; *Reimel* v. *House* (1968) 259 Cal.App.2d 511, 515-517 [66 Cal.Rptr. 434]; *Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd.* (1969) 71 Cal.2d 1215, 1221-1224 [81 Cal.Rptr. 251, 459 P.2d 667]; and *Big Boy Liquors, Ltd.* v. *Alcoholic Bev. etc. Appeals Bd.* (1969) 71 Cal.2d 1226, 1230-1233 [81 Cal.Rptr. 258, 459 P.2d 674].)

In *Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd., supra,* the court after noting the foregoing principles continued: "Accordingly, the department need *not* prove *that each retailer affected* received notice of the minimum prices, as the licensee contends. If there is substantial evidence to show that the price schedules involved in the instant case were published in a trade journal of general circulation prior to the effective dates of such schedules, we are required to sustain the findings of the department that those price schedules were effective." (71 Cal.2d at pp. 1222-1223, fn. omitted.)

■ The stipulation regarding the testimony in connection with the first accusation is substantially the same as the record which this court approved in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd., supra.*[6] The stipulated evidence therefore is adequate to sustain the finding of the Department that the publication satisfied the requirements of subdivision (b) of section 24755.[7]

Moreover, in that hearing, and by reference in the second hearing, the Department had before it the testimony of Mr. Page that the publication was mailed to every distilled spirits licensee in the northern California trading area (see fn. 5, above). The licensee's attacks on this testimony are resolved against him below. It suffices to sustain the findings of the Department in each proceeding.

*Hearsay*

■ The crux of the licensee's argument is Mr. Page's volunteered

---

[6]In *Reimel* v. *Alcoholic Bev. etc. Appeals Bd., supra,* the opinion recites: "The records of the administrative hearings show the following: Publication of the minimum retail price schedules was made in the Beverage Industry News, a privately owned monthly publication in business since 1946. It was a trade journal of the liquor industry in general circulation in the area here concerned. Its subscription price was $7.50 per year. Since 1946, copies of the publication had been mailed monthly to a majority of the offsale retail licensees authorized to sell alcoholic beverages in the northern California trading area." (256 Cal.App.2d at p. 166. See also, *Reimel* v. *House, supra,* 259 Cal.App.2d at p. 517.)

[7]There is nothing to indicate that the stipulation was withdrawn. (Cf. *Thayer* v. *Board of Osteopathic Examiners* (1958) 157 Cal.App.2d 4, 8 [320 P.2d 28].)

statement, "I don't do the work of keeping them [the subscriber list] up." (See fn. 5, above.) An examination of that statement in context fails to impeach the general statements which preceded it and followed in concerning the persons to whom the publication was sent or mailed. It appears that there are two categories of addressees, paying subscribers, and other licensees. (Cf. *In re Paradise News Press* (1957) 151 Cal.App.2d 496, 499 [311 P.2d 555].) The fact that the publisher did not do the actual work of segregating the sheep from the goats, does not necessarily impeach his ability to count the flock.

The publisher's testimony indicates that he published the Beverage Industry News and the accompanying price list for distribution to licensees in the designated trade area. In the absence of evidence to the contrary it may be presumed that the regular course of business was followed. (See, Code Civ. Proc., former § 1963, subd. 20; cf. Evid. Code, § 1105; *Hamilton* v. *Abodjian* (1947) 30 Cal.2d 49, 52 [179 P.2d 804]; *People* v. *Schmidt* (1956) 147 Cal.App.2d 222, 232 [305 P.2d 215]; *Lantz* v. *Stribling* (1955) 130 Cal.App.2d 476, 482 [279 P.2d 112]; *People* v. *Fowzer* (1954) 127 Cal.App.2d 742, 748 [274 P.2d 471]; and *Nash* v. *Wright* (1947) 82 Cal.App.2d 467, 473 [186 P.2d 686].)

Furthermore, even if "the subscriber list" be deemed the equivalent of the total circulation of the publication, the publisher testified he was familiar with it despite the fact he did not do the actual work in keeping it up. A person who directs or supervises the preparation of business records may testify to their contents. (See, Code Civ. Proc., former §§ 1953e-1953h; Evid. Code, § 1271; Code Civ. Proc., § 2010; *Imperial Water Co.* v. *Board of Supervisors* (1912) 162 Cal. 14, 24 [120 P. 780]; *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1963) 212 Cal.App.2d 106, 121 [28 Cal.Rptr. 74]; *People* v. *Schmidt, supra,* 147 Cal.App.2d 222, 231-232; and *People* v. *Fowzer, supra,* 127 Cal.App.2d 742, 747-748.) Where the records are detailed and extensive—here circulation lists—evidence may be received summarizing their contents. (See, Code Civ. Proc., former § 1855, subd. 5; Evid. Code, § 1509.)[8]

The licensee is in no position to question the application of the foregoing

---

[8]It is noted that in *Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd., supra,* the testimony of the publisher's representative showed that the trade journal was mailed to a list which had been obtained from an addressing company, and that the witness relied upon information received from the owner of that company as establishing that the names and addresses used were those of licensees in the trading area as they appeared on the Department's records. (71 Cal.2d at p. 1222.) There the court rejected the licensee's hearsay objection as irrelevant, because it was unnecessary to establish that the trade journal in question, as distinguished from some other journal, had been used to satisfy the publication requirements of section 24755. (71 Cal.2d at p. 1224, fn. 8, and see text of this opinion below.)

principles by the Department. He failed to attempt to determine the scope of the publisher's familiarity with the circulation list of the paper. He did not explore the distinction between the subscriber list and the general circulation of the paper. Moreover, as appears below, he did not by proper objection offer the Department an opportunity to elaborate on the issue he now raises.

*Lack of Proper Objection*

▇▇▇ The record shows that after Mr. Page first testified that the paper was sent to every distilled spirits licensee in the northern California trading area, he stated that he did not do the actual work in keeping them up. The licensee not only failed to object or to move to strike the prior statement, but also subsequently permitted the witness to reiterate it without objection (see fn. 5, above). Moreover, his ultimate objection was not aimed at the witness' lack of perception of that to which he testified, but was directed to the proposition that a public and not a private publication was required.[9] The Appeals Board in its decision stated, "At all stages of the proceedings appellant has argued that publication requirements of section 24755 concerning publication of price lists have not been complied with." It found that the publisher "testified that he does not actually work with the *mailing* list. . . ." (Italics added.) The record shows, and the licensee by his argument concedes, that no hearsay objection was interposed at the hearing on which the Department's decision rests.

▇▇▇ The rules of review, which are applicable to the Appeals Board by the provisions of section 22 of article XX of the California Constitution, and sections 23084 and 23085 of the Business and Professions Code, limit review to a determination of whether the Department has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in light of the whole record.

Under ordinary principles of review a party on appeal cannot rely upon an error not urged in the proceedings under review. (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, 377, fn. 23; *Reimel* v. *House, supra,* 259 Cal.App.2d 511, 515; *Reimel* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 256 Cal.App.2d 158, 176-177, on denial of rehearing.) ▇▇▇ Therefore, even if the testimony of the publisher had not been properly received under the principles first set forth in this part, the licensee could not properly first raise the hearsay objection before the Appeals Board.

[9]This contention received its death knell in *Reimel* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 256 Cal.App.2d 158, 170-171.)

The licensee, however, asserts that he may present the hearsay objection for the first time on review, because an objection at the hearing would be futile in the light of the provisions of subdivision (c) of section 11513 of the Government Code.[10] Support for this position is sought in the following passages: "In judicial proceedings the rule is well established that incompetent hearsay admitted *without objection* is sufficient to sustain a finding or judgment. (See *infra,* § 1306.) But this is not true under the Administrative Procedure Act. 'The section itself makes hearsay admissible and hence no effective objection to its introduction could be interposed, and the section itself limits the probative value of such evidence.' (*Swegle* v. *State Board of Equalization, supra,* 125 C.A.2d [432], 439 [270 P.2d 518] [concurring opinion]; *Benedetti* v. *Dept. Alcoholic Bev. Control* (1960) 187 C.A.2d 213, 217, 9 C.R. 525; see 15 Hastings L.J. 369)." (Witkin, Cal. Evidence (2d ed. 1966) § 31(c), p. 32.)

This statement is contrary to other decisions relating to the review of administrative proceedings. In *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124 [40 Cal.Rptr. 171] (hearing in Sup. Ct. denied, cert. den. (1965) 380 U.S. 934 [13 L.Ed.2d 821, 85 S.Ct. 940]) this court rejected the contention now advanced by the licensee. The opinion states, "Assuming that exhibit 9 constitutes objectionable hearsay, it is nevertheless of probative value because it was unobjected to when offered. [Citations.] Accordingly, hearsay, admitted without objection, may be considered in support of a finding." (229 Cal.App.2d at p. 139. See also, *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 63-64 [70 Cal.Rptr. 172] and *Griswold* v. *Department of Alcoholic Beverage Control* (1956) 141 Cal.App.2d 807, 810-811 [297 P.2d 762].)

The principle stated in the concurring opinion of *Swegle* v. *State Board of Equalization* (1954) 125 Cal.App.2d 432, 439 [270 P.2d 518], which is referred to in *Benedetti* v. *Dept. Alcoholic Bev. Control* (1960) 187 Cal.App.2d 213, at page 217 [9 Cal.Rptr. 525], and which is relied upon by the learned commentator, leaves the proponent with the alternative of loading up the record with what may be redundant testimony

---

[10]Government Code section 11513 provides in part: "(c) The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining [any direct]* evidence but shall not be sufficient in itself to suport a finding unless it would be admissible over objection in civil actions." (Italics added.)

*Effective January 1, 1967, the bracketed section was amended to read: "other" evidence. (Stats. 1965, ch. 299, § 135, p. 1301.)

on what appears to be an uncontested issue, or taking the risk that some of the tesimony upon which he relies will be found objectionable on review. If the adversary wishes to contest a particular issue and force the proponent to produce further evidence, or lose on failure to do so, it is no hardship to require him to assert a hearsay objection at the hearing so that it can then be determined if "the evidence would be admissible over objection in civil actions" and so "sufficient in itself to support a finding." So in this case an appropriate objection, if sustained, would have enabled the Department to produce the circulation lists of the publication, and the Department's list of licensees in the trading area for a determination of whether the publication was "a trade journal of general circulation in the trading areas affected" as required by the approved rule.

On the other hand, it must be recognized that "In administrative proceedings, respondents generally are not represented by counsel. To hold such parties to knowledge of the technical rules of evidence and to the penalty of waiver for failure to make a timely and specific objection would be unfair to them." (Note (1964) 15 Hastings L.J. 369, 371.) It is no hardship, however, to require a layman to make known what facts are contested. It suffices for this case to rule that hearsay, which is admitted without objection, will have probative value unless there is some evidence, admissible in administrative proceedings (see fn. 10 above), to the contrary. In other words, unless objected to, it will serve to shift the burden of producing evidence of the existence or nonexistence of the fact disclosed. (See Evid. Code, §§ 110 and 550.) This rule reconciles the cases referred to, dispenses with the necessity of redundant testimony to establish an uncontroverted fact, and protects the right of an unrepresented party who wishes to raise an issue in connection with the fact which the hearsay testimony is offered to establish.

Insofar as *Swegle* v. *State Board of Equalization, supra,* 125 Cal.App.2d 432, 437 and 439, *Benedetti* v. *Dept. Alcoholic Bev. Control, supra,* 187 Cal.App.2d 213, 217, and *Sunseri* v. *Board of Medical Examiners* (1964) 224 Cal.App.2d 309, 316-317 [36 Cal.Rptr. 553] are inconsistent with the views expressed herein they are rejected for the reasons set forth above.

*Burden of Producing Evidence*

■ The minimum retail price schedules received as evidence in this case were officially certified as those required by law to be filed with the Department pursuant to the provisions of section 24755. After the decision of the trial court and the preparation and filing of briefs on this appeal, but before oral argument, the Supreme Court rendered its opinion in

*Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd., supra.* The court ruled, "As we have already indicated, no sale at retail of distilled spirits bearing the brand, trademark, or name of the owner thereof may be made unless a minimum retail price schedule is filed with the department pursuant to section 24755, subdivision (a). Both of the minimum retail price schedules received as evidence in this case were officially certified as those required by law to be filed with the department. . . . Since the department is given the power to administer and enforce the liquor laws throughout the state (Cal. Const., art. XX, § 22; Bus. & Prof. Code, §§ 23049-23051), it is the duty of the department to administer and enforce the retail price maintenance provisions of the Alcoholic Beverage Control Act. (Citations.) It must be presumed, therefore, that its 'official duty has been regularly performed' (Evid. Code, § 664 [Code Civ. Proc., former § 1963, subd. (15)]) and that the department, in certifying that the price schedules were effective in December 1966, satisfied itself they were published prior to their effective dates in a trade journal of general circulation as required by the former provisions of section 24755, subdivision (b), and former rule 99(k).

"The effect of this presumption, which affects the burden of proof (Evid. Code, § 660), is to shift to the licensee the burden of proving that the department did not regularly perform its official duty in that it failed to ascertain whether the schedules had been properly published. (See Evid. Code, §§ 605, 606.) In this respect the licensee has failed to meet the burden of proof necessary to rebut the presumption." (71 Cal.2d at p. 1223. See also, *Big Boy Liquors, Ltd.* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 71 Cal.2d at pp. 1232-1233.)

The findings of the Department are sustained by the foregoing presumption.

The judgments are affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 19, 1970.